KREMERS-URBAN COMPANY, a Wisconsin corporation, Plaintiff-Respondent, and Cross-Appellant,

v.

AMERICAN EMPLOYERS INSURANCE Co., one of the Commercial Union Assurance Companies, a foreign insurance corporation, Defendant-Appellant and Cross-Respondent.

Supreme Court

*No. 82–991. Argued March 27, 1984.—Decided June 29, 1984.*

(Also reported in 351 N.W.2d 156.)

For the defendant-appellant and cross-respondent there were briefs by *John R. Hoaglund, Jr., Robert E. Wrenn, Susan J. Martin,* and *Gibbs, Roper, Loots & Williams,* Milwaukee, and *Jacobs, Williams and Montgomery, Ltd.,* Chicago, Illinois, and oral argument by *Barry L. Kroll.*

For the plaintiff-respondent and cross-appellant there were briefs by *Lee J. Geronime, James E. Schacht* and *Michael, Best & Friedrich,* Milwaukee, and oral argument by *Mr. Schacht.*

HEFFERNAN, C. J. The defendant-appellant, American Employers Insurance Co., one of the Commercial Union Assurance Companies (hereinafter Commercial Union), appeals from a judgment of the circuit court for

Milwaukee county, Michael D. Goulee, Circuit Judge, entered on April 8, 1982, which granted summary judgment in favor of the plaintiff-respondent, Kremers-Urban Company (hereinafter Kremers-Urban) and denied Commercial Union's cross-motion for summary judgment. Kremers-Urban cross-appeals the portion of the circuit court's judgment which struck the award to Kremers-Urban of reasonable attorney's fees. We accepted certification of the appeal from the court of appeals. We affirm the judgment of the circuit court for Milwaukee county because it appropriately held, as a matter of law, that liability insurance policy coverage issued by Commercial Union to Kremers-Urban prior to March 16, 1968, is triggered when a pregnant woman ingested DES or when Kremers-Urban engaged in marketing activities, as both constitute an "occurrence" as that term is used in those policies. We also affirm that Kremers-Urban is not entitled to attorney's fees for this action commenced under the declaratory judgments act, sec. 806.04(10), Stats.

Commercial Union issued a series of comprehensive product liability insurance policies to Kremers-Urban from March 16, 1954,[1] through March 16, 1976. Kremers-Urban is a manufacturer of pharmaceuticals, which manufactured and distributed, from 1947 to 1962, a product labeled "stilbestrol," generic name diethylstilbestrol, commonly known as DES. Diethylstilbestrol was prescribed to pregnant women to prevent possible spontaneous abortions and for treatment of estrogenic deficiencies.

---

[1] Although Kremers-Urban contends that Commercial Union provided coverage continuously from at least 1947 until March 16, 1976, policies for any period prior to March 16, 1954, were not produced and not part of the record. We do not undertake construction of policies not a matter of record. Accordingly, we limit our review to policies in effect from March 16, 1954, through March 16, 1976.

Beginning in 1974, product liability claims were brought against Kremers-Urban by plaintiffs alleging they developed, or are subject to the high risk of developing, clear cell adenocarcinoma of the vagina and other cancerous or precancerous lesions of the cervix and vagina as a result of their being exposed as unborn children to DES, ingested by their mothers, manufactured by Kremers-Urban, or that Kremers-Urban was liable under an enterprise liability theory.

Under the enterprise theory of liability, a plaintiff alleges that all of the DES manufacturers are jointly liable for claimed damages, because the sale and distribution of DES was a direct result of the collective effort of all manufacturers in promoting, advertising, and marketing DES. As of the date of commencing this action, Kremers-Urban had been named as a defendant in at least 49 DES cases in some 16 states. Kremers-Urban tendered these cases to Commercial Union for defense. Commercial Union provided defense in those cases where it was alleged that the plaintiff's disease manifested itself during one of Commercial Union's policy periods. Starting in December of 1980 Commercial Union rejected the defense of four cases and attempted to withdraw from the previously accepted defense of another case where the alleged injury had not manifested itself during a Commercial Union policy period.

This action, instituted by Kremers-Union on February 25, 1981, seeks a declaratory judgment, pursuant to sec. 806.04, Stats., to construe the liability insurance policies issued by Commercial Union to Kremers-Urban from March 16, 1954, to March 16, 1976, declaring that Commercial Union has the contractual obligation to defend and indemnify Kremers-Urban for the product liability claims allegedly resulting from ingestion of DES by the plaintiff's mother or marketing activities engaged in by Kremers-Urban while the insurance policies were in

force and effect regardless of when the injury became manifest. Kremers-Urban also seeks reimbursement for attorney's fees in connection with this declaratory judgment action.

Pursuant to a motion for temporary injunction by Kremers-Urban, filed February 22, 1981, Judge Leander J. Foley, then presiding trial judge, ordered on April 4, 1981, that Commercial Union not withdraw from cases in which they are already representing Kremers-Urban and ordered a bond be posted. The injunction was to continue until the issue of coverage was decided.

On May 4, 1981, Kremers-Urban, in the declaratory judgment action, moved for summary judgment. Some five months later, on October 16, 1981, Commercial Union made a cross-motion for summary judgment for a declaration that its policies provide coverage only if the alleged date of manifestation of bodily injury (adenosis or adenocarcinoma) is within the policy period. The policies interpreted by the circuit court were in effect from March 16, 1954,[2] to March 16, 1976. During this time there were five variations of the language used in the policies. The pertinent parts of the policies in question are as follows:

Policies in effect between March 16, 1954, through March 16, 1960, contained the following:

"I.
"Coverage B—Bodily Injury Liability—Except Automobile.
"To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract as defined herein, for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons.

[2] The circuit court interpreted policies it assumed were in effect at least from sometime in 1951. See note 1, *supra*.

"II. Defense, Settlement, Supplementary Payments.

"As respects such insurance as is afforded by the other terms of this policy the Company shall

"(a) defend in his name and behalf any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company;

". . .

"IV. Policy Period, Territory.

"This policy applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, Canada or Newfoundland, or on a vessel between ports within said territory.

". . .

"VI. Accident—Occurrence.

"Wherever the word "accident" is used with respect to the insurance afforded under Coverages A, B and C, the word "occurrence" shall be substituted therefor."

Policies in effect between March 16, 1960, and March 16, 1966, contained the following revision in the policy language:

"I.

"Coverage B—Bodily Injury Liability—Except Automobile.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury as defined herein sustained by any person.

"II. Defense, Settlement, Supplementary Payments.

"With respect to such insurance as is afforded by this policy, the company shall:

"(a) (1) defend any suit, except by arbitration, against the insured alleging such bodily or other injury or destruction and seeking damages which are payable under the terms of this policy, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

"CONDITIONS
 "3. Definitions.
 "(g) the term 'bodily injury' means bodily injury, sickness or disease, including death at any time resulting therefrom."

Sections IV, Policy Period, and V, Accident-Occurrence, were not changed.

In the 1966–67 policy, the policy format was revised. Coverage B—Bodily Injury Liability—Except Automobile was shortened to read:

 "1. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

| Coverage B<br>Bodily Injury<br>Liability—<br>Except Automobile | bodily injury, caused by an occurrence, sustained by any person; |
|---|---|

and with respect to such insurance as is afforded by the policy, the company shall (a) defend any suit, except by arbitration, against the insured alleging such bodily injury or property damage and seeking damages on account thereof, even if such suit is groundless, false or fraudulent, but the company make make such investigation, negotiation and settlement of any claim or suit as it deems expedient, and (b) defend any arbitration proceeding wherein an indemnitee under a contract as defined herein or under a warranty of goods or products seeks damages on account thereof and which are payable under the terms of this policy, and wherein the company is entitled to exercise the insured's right in the choice of arbitrators and in the conduct of such arbitration proceedings; provided, however, the provisions of subdivision (b) of this paragraph shall not apply unless the agreement to arbitrate was executed prior to the occurrence."

In addition, the following definition of the word, "occurrence," was added:

 "III. Definitions
 "(b) 'occurrence' means (1) an event, or continuous or repeated exposure to conditions, or (2) an accident,

which causes bodily injury or property damage during the policy period, which is neither expected nor intended by the insured. . . ."

The definition of bodily injury was not changed.

This language remained in effect until March 16, 1968, when the following refinements were made. The coverage section was changed to read:

"I. COVERAGE A—BODILY INJURY LIABILITY
COVERAGE B—PROPERTY DAMAGE LIA-
BILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A. bodily injury or
Coverage B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."

The definition of "occurrence" was changed to read:

" 'occurrence' means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured;"

The definition of "bodily injury" was changed to read:

" 'bodily injury' means bodily injury, sickness or disease sustained by any person;"

This language was used until March 16, 1973, at which time the final adjustments to the policy language were

made. The definition of "bodily injury" and "occurrence" thereafter read:

" 'bodily injury' means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

" 'occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;"

This language remained in effect until March 16, 1976, when all coverage ended.

Judge Michael D. Guolee, who replaced Judge Foley, heard oral arguments on December 14, 1981, from both parties on their respective motions for summary judgment. The circuit court determined it was appropriate to utilize summary judgment because there was no dispute as to material facts. As the dispositive issue involved contractual interpretation, the circuit court ascertained the intention of the parties by determining what a reasonable person in the position of the insured would have understood to be covered under the insurance policy.

The circuit court noted Commercial Union's position that coverage under the policies it issued is triggered at the time of the resulting injury, manifestation, rather than the time of ingestion of the drug by the mothers of the allegedly injured plaintiffs or when Kremers-Urban engaged in marketing activities involving DES. However, the circuit court was persuaded by Kremers-Urban that the "occurrence," spoken of in the policies in effect prior to 1968 which triggered coverage, was the ingestion of DES, manufactured by Kremers-Urban, by pregnant mothers and the marketing and distribution activities engaged in by Kremers-Urban as to DES.

A review of the policies in effect prior to 1968 revealed to the circuit court that there was no definition of "occurrence." Thus the term was given its ordinary and common meaning by the circuit court as ascertained

from Webster's *New World Dictionary,* Second College Edition, 1974, at 984, of " 'the general word for anything that happens or later takes place' " or " 'something that occurs,' 'event,' 'incident.' " The circuit court noted that, prior to 1968, Commercial Union "had decided not to tie coverage to *results* during the policy period but only to an event or accident *caused* during the policy period." (Emphasis in the original.) It was concluded by the circuit court that, under the contract, coverage was triggered by the ingestion of the drug by the mother, rather than when the disease was manifested or was diagnosed. As to the marketing activities engaged in by Kremers-Urban, the court deemed such activities to be an "occurrence" within the reasonable expectations of the parties which triggered coverage. Commercial Union, the court held, had a duty to defend Kremers-Urban in all suits which allege ingestion of DES during a policy period and during policy periods in which it is alleged that activities took place. Accordingly, on December 15, 1981, the cross-motion for summary judgment by Commercial Union was denied, the motion for summary judgment by Kremers-Urban was granted, and Kremers-Urban was directed to receive its costs and disbursements, including reasonable attorney's fees.

Subsequently, at the hearing before Judge Goulee on Kremers-Urban's motion for judgment on the order, Commercial Union questioned the court's authority to award attorney's fees. On March 15, 1982, the court struck the award of attorney's fees from its original order, recognizing that the parties were allegedly able to absorb their legal expenses; that under the contract there is nothing that gives either party the right to attorney's fees; that under the declaratory judgments act, sec. 806.04(10), Stats., entitled "Costs," attorney's fees are

not included (awardable) in this particular case; and that there is no bad faith issue.[3]

Commercial Union appealed from the summary judgment in favor of Kremers-Urban, which declared that coverage in the above mentioned insurance policies prior to 1968 is triggered by the ingestion of DES by pregnant mothers and manufactured by Kremers-Urban and the marketing activities engaged in by Kremers-Urban concerning DES. The order also denied Commercial Union's counter-motion for summary judgment. Kremers-Urban cross-appealed from the order denying the award to Kremers-Urban of reasonable attorney's fees under sec. 806.04(10), Stats.

■

The case is before this court on certification of an appeal from a judgment following a motion for summary judgment. Upon review of a summary judgment decision, this court must apply the standards set forth in sec. 802.08(2), Stats.,[4] in the same manner as the trial court.

---

[3] If there had been a bad faith issue, generally the law is that in the present litigation the successful party has no recompense beyond the taxable costs which ordinarily only include a portion of his expense. If the plaintiff had been obliged by the defendant's wrongful conduct, be it in tort or breach of contract, to defend or prosecute previous legal proceedings, this court has allowed the plaintiff to recover all expenses including attorney's fees. *Baker v. Northwestern Nat. Casualty Co.*, 26 Wis. 2d 306, 319–20, 132 N.W.2d 493 (1965); *Cedarburg L. & W. Comm. v. Glens Falls Ins. Co.*, 42 Wis. 2d 120, 126; 166 N.W.2d 165 (1969).

The action before the court is in the nature of a declaratory judgment and does not involve previous litigation.

[4] "(2) MOTION. The motion shall be served at least 20 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

*Heck & Paetow Claim Service, Inc., v. Heck,* 93 Wis. 2d 349, 356, 286 N.W.2d 831 (1980) ; *Wamser v. Bamberger,* 101 Wis. 2d 637, 641, 305 N.W.2d 158 (Ct. App. 1981). On summary judgment the moving party has the burden to establish the absence of a genuine issue as to any material fact. The court on summary judgment does not decide a genuine issue of material fact but decides whether there is an issue of fact in dispute. *Poynter v. Johnston,* 114 Wis. 2d 439, 446, 338 N.W.2d 484 (1983) ; *Grams v. Boss,* 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980) ; *Kraemer Bros. v. United States Fire Ins. Co.,* 89 Wis. 2d 555, 565–67, 278 N.W.2d 857 (1979). This court must reverse the summary judgment if it finds that the circuit court erred in determining that there is no genuine issue as to any material fact. *Prince v. Bryant,* 87 Wis. 2d 662, 666, 275 N.W.2d 676 (1979) ; *Bank of Two Rivers v. Zimmer,* 112 Wis. 2d 624, 631, 334 N.W.2d 230 (1983) ; *Arnold v. Shawano County Agr. Society,* 111 Wis. 2d 203, 209, 330 N.W.2d 773 (1983).

The ultimate issue before the court is the determination of the coverage of the various insurance policies. The verbiage of the provisions in effect from 1954 to 1976 is not disputed by the litigants.[5] Accordingly, we

___

any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

[5] As previously noted, Kremers-Urban contends it continuously was provided liability insurance coverage from 1947 to 1976, or at least as early as 1951. Although Kremers-Urban did produce endorsements or audit reports which purport to relate to policies in effect from 1951 through 1953 and a letter dated March 17, 1980, from Commercial Union to Kremers-Urban which serves as an admission that the first contract was effective March 16, 1951, no actual policies were produced for any year earlier than 1954. We decline to construe policy provisions in contracts which are not a matter of record.

limit our review to liability insurance policies Commercial Union issued to Kremers-Urban from March 16, 1954, to March 16, 1976.

The construction of words and phrases in insurance policies is generally a matter of law and is controlled by the same rules of construction as are applied to contracts generally. *Garriguenc v. Love,* 67 Wis. 2d 130, 133, 226 N.W.2d 414 (1975) ; *RTE Corp. v. Maryland Casualty Co.,* 74 Wis. 2d 614, 620–21, 247 N.W.2d 171 (1976) ; *Ehlers v. Colonial Penn Ins. Co.,* 81 Wis. 2d 64, 74, 75, 259 N.W.2d 718 (1977). The objective in interpreting and construing a contract is to ascertain and carry out the true intention of the parties. *Kraemer Bros. v. United States Fire Ins. Co., supra,* 89 Wis. 2d at 562. The words of an insurance contract are to be construed in accordance with the principle that the test is not what the insurer intended the words to mean but what a reasonable person in the position of the insured would have understood the words to mean. *Garriguenc v. Love, supra,* 67 Wis. 2d at 134–35; *Olguin v. Allstate Ins. Co.,* 71 Wis. 2d 160, 164, 237 N.W.2d 694 (1976). The reasonable expectations of coverage of the insured should be furthered by the interpretation given. *Handal v. American Farmers Mutual Casualty Co.,* 79 Wis. 2d 67, 78, 255 N.W.2d 903 (1977). Language in an insurance contract is to be given the common and ordinary meaning it would have in the mind of a lay person. *Henderson v. State Farm Mutual Automobile Ins. Co.,* 59 Wis. 2d 451, 457, 208 N.W.2d 423 (1973) ; *Bertler v. Employers Insurance of Wausau,* 86 Wis. 2d 13, 18, 271 N.W.2d 603 (1978) ; *Schmidt v. Luchterhand,* 62 Wis. 2d 125, 133, 214 N.W. 2d 393 (1974). Words or phrases in a contract are ambiguous when they are fairly susceptible to more than one construction. *Garriguenc v. Love, supra,* 67 Wis. 2d at 135. Whether ambiguity exists in a contract is a question of law. *Capital Investments, Inc., v. Whitehall Pack-*

*ing Co.*, 91 Wis. 2d 178, 189, 280 N.W.2d 254 (1979). Where no ambiguity exists in the terms of the policy, we will not engage in construction, but will merely apply the policy terms. *Rabinovitz v. Travelers Insurance Co.*, 11 Wis. 2d 545, 549–50, 105 N.W.2d 807 (1960).

The issue we address in this case is whether there was an "occurrence" within the meaning of the various policy provisions, at a time the policies were in force, which triggers coverage.

The parties before this court and the circuit court did not find the provisions in the insurance contract ambiguous. The circuit court granted Kremers-Urban's motion for summary judgment finding that the word, "occurrence," in contracts prior to 1968 tied coverage only to an event or accident during the policy period and, accordingly, ingestion of DES by pregnant mothers and marketing activities were occurrences that triggered coverage. Because we agree with the court and the parties that the terms of the various policies are unambiguous, the application of the plain meaning rule is appropriate. We will apply the policy terms according to their everyday meaning, except where the policy itself provides an applicable definition, to ascertain the intention of the parties and to ascertain what a reasonable insured's anticipation of coverage would have been.

We are invited to engage in a discussion of whether policy coverage is triggered by "exposure" to DES or marketing activities, as Kremers-Urban asserts, or whether policy coverage is triggered by the "manifestation" of adenosis or cancerous lesions, as contended by Commercial Union. We decline to engage in such discussion, because we limit our review to the language of the insurance policies. We restrict our interpretation of coverage of the various policies to the language of the insurance contracts.

We begin our inquiry by considering the policies at the end of the period of contractual relationship in effect from March 16, 1968, through March 16, 1976, which contain a definition of "occurrence." The policies issued by Commercial Union after March 16, 1968, define "occurrence" as an "accident . . . which results, during the policy period, in bodily injury . . . ." "Bodily injury" was in turn defined as "bodily injury, sickness or disease sustained by any person." In the policies effective from March 16, 1973, to March 16, 1976, "occurrence" is defined as an "accident . . . which results in bodily injury . . . ." "Bodily injury" is defined as "bodily injury, sickness or disease sustained by any person which occurs during the policy period . . . ." Under either variation the "occurrence" which acts to trigger coverage is tied directly to bodily injury, disease or sickness which result during the policy period. A reasonable insured would have understood that, in order for coverage to be invoked under the policies in effect from March 16, 1968, through March 16, 1976, an injury, sickness or disease had to result during that policy period. Thus, in order for Commercial Union to have the duty to defend and indemnify Kremers-Urban for liability under the policies in effect from 1968 to 1976, the complainant must allege an injury, sickness or disease during the policy periods between 1968 and 1976. Both parties agree that to invoke coverage under the policies in effect after March 16, 1968, requires that a complainant allege an injury resulted during the policy period.

The pivotal issue on this appeal is what "occurrence" triggers coverage under the policies in effect between March 16, 1954, and March 16, 1968. Commercial Union urges this court to look to the 1968 definition of "occurrence" to clarify the earlier policies which did not provide a definition of "occurrence" or which provided a different definition. There is no merit to the contention

that post-1968 policies should be reviewed to determine when coverage is triggered under pre-1968 policies. Insurance contracts are to be interpreted as what a reasonable insured would have understood the words of the particular policy to mean and what the parties intended. What can be gathered from the post-1968 policies is that they have a different concept of "occurrence" than theretofore. Hence, it is reasonable to conclude that the meaning is different than in earlier policies. It is also clear that, if Commercial Union knew how to define "occurrence" post-1968, it should have known how to do it before that time. The fact that it did not strongly demonstrates that the intent in respect to coverage changed post-1968. It is specious to assert, as did Commercial Union at oral argument, that the 1968 and subsequent policies merely made what was implicit before explicit.

Although policies are to be considered as a whole in order to give each of its provisions the meaning intended by the parties (*Kraemer Bros. v. United States Fire Ins. Co., supra,* 89 Wis. 2d at 562; *Laabs v. Chicago Title Ins. Co.,* 72 Wis. 2d 503, 511, 241 N.W.2d 434 (1976)), Commercial Union cites no authority to support its position that policies not in existence (post-1968) should be used to construe policies in existence (pre-1968). A reasonable person in the position of the insured cannot be expected to rely on what future policy provisions might make explicit. Definitions of terms which came into existence subsequent to the expiration of the contract in question can have no bearing on what the common and everyday meaning a reasonable insured would have given to the undefined term in an earlier policy. If Commercial Union had in fact intended "occurrence" to be defined as it was in policies in effect after 1968, it should have so defined "occurrence" in the pre-1968 policies.

We consider next the language of the insurance policy in effect from March 16, 1966, to March 16, 1968. This policy provided that Commercial Union agreed:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"Coverage B—Bodily Injury Liability—Except Automobile

"bodily injury, caused by an occurrence, sustained by any person."

"Occurrence" was defined in this policy to mean:

"(1) an event, or continuous or repeated exposure to conditions, or (2) an accident, which *causes* bodily injury or property damage during the policy period, which is neither expected nor intended by the insured. . . ." (Emphasis supplied.)

The policy expressly provides that Commercial Union will indemnify Kremers-Urban for damages because of bodily injury caused by (1) an event or (2) accident which causes bodily injury or property damage during the policy period. The plain meaning of these provisions is that the event or accident which causes bodily injury must occur during the policy period. Coverage is predicated not upon the result which might give rise to ultimate liability, but upon the event or accident which occurred during the policy period. Although the event or accident which causes the bodily injury must occur during the policy period, there is no provision that bodily injury must result during that period. The bodily injury need only be caused by an event or accident which allegedly occurred during the policy period, in order that coverage be triggered under the policy in effect between March 16, 1966, and March 16, 1968.

Commercial Union asserts that, for coverage, the time of "bodily injury or property damage" must be "during the policy period." It further asserts that to construe the policies as though "event or . . . exposure to conditions" during the policy period would trigger coverage makes surplusage of "which causes bodily injury or property damage." It is argued by Commercial Union that the phrase, "during the policy period," modifies the

phrase, "bodily injury," and not the words, "event" or "accident." Thus, according to Commercial Union, bodily injury which resulted during the policy period triggers coverage under the March 16, 1966, to March 16, 1968, policies.

To accept such a contorted construction of the policy language is to deviate from our mandate to construe policies as would a reasonable insured. A reasonable insured would understand that the phrase, "during the policy period," specifies when the occurrence (event or accident) must take place in order that coverage under the policy be invoked. The words, "which causes bodily injury or property damage," are not rendered superfluous by such a construction. The event or accident which causes the bodily injury must happen during the policy period. There is no indication when the bodily injury must result—only that the event or accident which caused the bodily injury or property damage must happen during the policy period.

We conclude the coverage in the insurance policies in effect from March 16, 1966, to March 16, 1968, is triggered by an allegation that an event or accident which happened during the policy period caused bodily injury. It should be noted that the language of the subsequent policy is different and makes clear that the bodily injury must occur during the policy period.

A reasonable insured in the position of Kremers-Urban would have understood that the ingestion of DES by pregnant mothers and Kremers-Urban's marketing activities are events or accidents which, if they allegedly happened during the policy period and subsequently caused bodily injury, would trigger coverage and Commercial Union's obligation to defend and pay on behalf of Kremers-Urban all sums which it shall be obligated to pay.

Prior to 1966 the liability insurance contracts issued to Kremers-Urban did not contain a definition of occur-

rence. The policies effective from March 16, 1954, through March 16, 1960, state Commercial Union will defend and pay on behalf of Kremers-Urban sums it is obligated to pay by reason of liability because of bodily injury, sickness or disease. The policies are applicable "only to accidents which occur during the policy period"; and where the word, "accident," is used, the word, "occurrence," shall be substituted. Policies issued from March 16, 1960, through March 16, 1966, were slightly revised and defined bodily injury as "bodily injury, sickness or disease." However, the "occurrence" which must have happened during the policy period was not defined.

Words used in insurance contracts "are to be given the common and ordinary meaning which they have in the minds of the average layman . . . ." *Schmidt v. Luchterhand, supra,* 62 Wis. 2d at 133, citing with approval *Solberg v. Metropolitan Life Ins. Co.,* 50 Wis. 2d 746, 753, 185 N.W.2d 319 (1971). The plain meaning of the language in policies from March 16, 1954, through March 16, 1966, indicates that Commercial Union would defend Kremers-Urban and would pay on behalf of Kremers-Urban, if it became liable, for damages because of bodily injury, sickness or disease. There is no provision in the policy which limits coverage to bodily injury, sickness or disease resulting during the policy period. The accident or occurrence must have happened during the policy period. That is all that is required. What happens thereafter is a matter of cause, cause in fact and proximate cause. The ordinary and common meaning of "occurrence" is "something that takes place; something that happens unexpectedly and without design." *Webster's Third New International Dictionary.* A reasonable insured would have understood that anything that happened during the policy period, for which it was subsequently held liable for damages because of bodily injury, was encompassed by the term, "occurrence." The policy lan-

guage, "during the policy period," refers to "occurrence" or "accident" and not to "bodily injury, sickness or disease." If the occurrence happened during the policy period, then under the unambiguous terms of the policy, Commercial Union would pay, on behalf of Kremers-Urban, damages for bodily injury, sickness or disease.

The construction of the word, "occurrence," is further supported by *Patrick v. Head of Lake Cooperative Electric Assn.*, 98 Wis. 2d 66, 69–70, 295 N.W.2d 205 (Ct. App. 1980), in which the court of appeals discussed the term. The court stated:

> "The term 'occurrence' originally came into use in insurance policies because a restrictive construction of the term 'accident' proved unsatisfactory to the insured, the public, and the courts. The purpose of using 'occurrence' rather than 'accident' was to expand coverage. 7A Appleman, *Insurance Law and Practice*, sec. 4492 (1979). Its use permits consideration of the state of mind of the actor as it relates to the resultant damage, rather than only as it relates to causation. 7A Appleman, *supra* sec. 4492.02. Its use affords coverage for an intended act and intended result if they cause damage unintended from the standpoint of the insured."

The use of "occurrence" by Commercial Union thus expanded coverage to include more than was intended by "accident." Under such a construction it is not necessary to choose between the exposure theory of coverage or the manifestation theory of coverage because "occurrence" contemplates both. The ingestion of DES by pregnant mothers is certainly an "occurrence" because it is an "event" that happened within the policy period.

We conclude that it was the intention of the parties, and a reasonable insured would have so understood, that when Kremers-Urban contracted for liability insurance for the years March 16, 1954, through March 16, 1968, it was insured for any damages for which it subsequently became liable because of bodily injury, sickness or disease

from an occurrence during the policy period. Ingestion of a drug, such as DES, would surely have been contemplated by a drug manufacturer as being covered by the policy.

Kremers-Urban seeks declaratory judgment not only as to alleged ingestion of DES by pregnant mothers but also as to the marketing activities concerning DES for which it may be held liable under the enterprise theory. A reasonable insured in Kremers-Urban's position is expected to understand that a policy affording coverage for legal liabilities provide coverage regardless of the theory of liability under which a claim is made. Coverage is reasonably to be expected by Kremers-Urban when a plaintiff makes a claim under enterprise liability or any other theory as long as the conditions of the policies are satisfied. The policy coverage, afforded Kremers-Urban from March 16, 1954, to March 16, 1968, is triggered, under the express terms of the policies, when an occurrence allegedly happened during the policy period for which it ultimately may be liable in damages for bodily injury, sickness or disease. If a plaintiff alleges in a complaint that Kremers-Urban participated in marketing activities during 1954 to 1968 for which it may be liable in damages for bodily injury, sickness or disease, then coverage is triggered.[6] Although Commercial Union in hindsight may prefer to have limited what events or occurrences

---

[6] We emphasize that the issue we decide is limited to what triggers coverage of insurance policies issued by Commercial Union to Kremers-Urban. We do not address whether Wisconsin recognizes the enterprise theory of liability but only whether the enterprise theory allegation of the complaint is sufficient to invoke coverage under the various insurance policies in effect. We have previously discussed the theories under Wisconsin law which would permit a plaintiff to recover for injuries allegedly resulting from diethylstilbestrol (DES) in *Collins v. Eli Lilly Co.*, 116 Wis. 2d 166, 342 N.W.2d 37 (1984).

trigger insurance coverage, when it has failed to do so in the insurance contract itself, this court will not rewrite the contract to create a new contract to release the insurer from a risk it could have avoided through a more foresighted drafting of the policy.

Accordingly, we conclude that, under the terms of the insurance policies issued by Commercial Union to Kremers-Urban effective March 16, 1954, through March 16, 1968, coverage is triggered when it is alleged that DES during these policy periods was ingested by mothers of plaintiffs who claim damages or when it is alleged that Kremers-Urban's participation in marketing activities of DES for which it may be liable in damages took place or occurred during those policy periods. The coverage in the policies effective from March 16, 1968, through March 16, 1976, is triggered when it is alleged that an injury resulted during the policy period.

The second issue presented is whether an insured who institutes a declaratory judgment action to determine existence of coverage under the liability insurance policy, is entitled to attorney's fees incurred in the course of bringing the declaratory judgment action. The general rule, known as the American rule, is that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor. Each party to a lawsuit, under this theory, should bear its own costs of litigation. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714 (1967) ; *Summit Valley Industries, Inc. v. Carpenters*, 456 U.S. 717 (1982) ; *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975). The American rule has been recognized and followed in Wisconsin. *Baker v. Northwestern National Casualty Co.*, 26 Wis. 2d 306, 132 N.W.2d 493 (1965) ; *City of Beloit v. Town of Beloit*, 47 Wis. 2d 377, 392, 177 N.W.2d 361 (1970) ; *Kohlenberg v. American Plumbing Supply*

*Co.*, 82 Wis. 2d 384, 263 N.W.2d 496 (1978) ; *Murray v. Holiday Rambler, Inc.*, 83 Wis. 2d 406, 265 N.W.2d 513 (1978).

We have also recognized that attorney's fees and expenses incurred in third-party litigation may be recovered when they are the natural and proximate result of the breach of contract or other wrongful act which has caused the plaintiff to become involved in litigation with *third parties. Cedarburg Light & Water Comm. v. Glens Falls Insurance Co.*, 42 Wis. 2d 120, 125, 166 N.W.2d 165 (1969). This rule does not deal with the cost of litigation vis-a-vis the defendant. *Id.*, quoting 5 Corbin, *Contracts* (1964), pp. 225, 226, sec. 1037. No third-party litigation expenses are involved here. It is also not asserted that the insurance contracts provide for attorney's fees in the case at bar.[7]

Kremers-Urban asserts in its cross-appeal that it is entitled to reasonable attorney's fees incurred in instituting a declaratory judgment action. The Uniform Declaratory Judgments Act, sec. 806.04(10), Stats., provides as follows:

---

[7] Some jurisdictions have found the insurer's conduct in refusing to defend its insured to be a contractual basis for the award of attorney's fees. *Hegler v. Gulf Insurance Co.*, 270 S.C. 548, 243 S.E.2d 443 (1978) ; *Security Mut. Casualty Co. v. Luthi*, 303 Minn. 161, 226 N.W.2d 878 (1975) ; *Cohen v. American Home Assurance Co.*, 255 Md. 334, 258 A.2d 225 (1969). Other jurisdictions have ruled, despite policy provisions extending recovery to expenses incurred at the insurer's request, there is no recovery for attorney's fees in a declaratory judgment action. *Farmers Ins. Co. of Washington v. Rees*, 27 Wash. App. 369, 617 P.2d 747 (1980) ; *Clark v. Exchange Ins. Assn.*, 276 Ala. 334, 161 So. 2d 817 (1964) ; *State Security Insurance Co. v. White*, 498 F. Supp 873 (S.D. Ga. 1980), *aff.* 667 F.2d 97 (1982) ; *Preferred Risk Mutual Insurance Co. v. United States Fidelity & Guaranty Co.*, 77 Ill. App. 3d 266, 32 Ill. Dec. 799, 395 N.E.2d 1180 (1979).

"Costs. In any proceeding under this section the court may make such award of costs as may seem equitable and just."

By virtue of the word, "may," the court not only has discretion in the awarding of costs but also has discretion in determining which costs are equitable and just. However, sec. 806.04(10), Stats., does not specifically authorize attorney's fees. Because there are statutes which specifically provide for attorney's fees, we cannot imply the power to award fees from statutes. *Domain Industries, Inc. v. Thomas,* 118 Wis. 2d 99, 345 N.W.2d 516 (Ct. App. 1984); *City of Beloit v. Town of Beloit,* 47 Wis. 2d 377, 393, 177 N.W.2d 361 (1970). We decline to expand or enlarge the "costs" available in declaratory judgment actions to include attorney's fees. The legislature is presumed to have acted with full knowledge of the general rule that attorney's fees are not recoverable unless expressly authorized by statute. *Glinski v. Sheldon,* 88 Wis. 2d 509, 519–20, 276 N.W.2d 815 (1979). Absent any statutory direction, costs, excluding attorney's fees, may be awarded pursuant to sec. 806.04(10), Stats., as the trial court in its discretion determines is just and equitable.[8]

[8] Several jurisdiction which have adopted the Uniform Declaratory Judgments Act have held that attorney's fees may not be recovered as costs, in actions involving insurance coverage, in the absence of a contractual provision to the contrary. *State Farm Mutual Automobile Insurance Co. v. O'Brien,* 24 Ariz. App 18, 535 P.2d 46 (1975); *Burton v. Lumbermens Mutual Casualty Co.,* 152 So. 2d 235 (La. App.), *cert. denied,* 244 La. 895, 154 So. 2d 767 (1963); *Rocky Mountain Fire & Casualty Co. v. Rose,* 62 Wash. 2d 896, 385 P.2d 45 (1963); *Western Casualty & Surety Co. v. Marchant,* 615 P.2d 423 (Utah 1980); *Suwannee County v. Garrison,* 417 So. 2d 1070 (Fla. App. 1982); *see,* also 22 Am. Jur. 2d, *Declaratory Judgments,* sec. 101; 15A *Couch on Insurance* 2d, sec. 58.141, p. 408; *Insured's Right to Recover Attorneys' Fees Incurred in Declaratory Judgment Action to Determine Existence of Coverage under Liability Policy,* 87 A.L.R.3d 429.

Other courts have concluded that an insured is not entitled to attorney's fees in a declaratory judgment action it commenced but

We take no position on whether attorney's fees are allowed under any other subsection of the declaratory judgments act.[9]

It was noted on the record that the circuit court considered the fact that both parties to the litigation were allegedly able to absorb their legal expense, that under the contract there are no provisions which give either party the right to attorney's fees, that under sec. 806.04(10), Stats., attorney's fees are not included, and that there is no contention that Commercial Union in bad faith refused to defend Kremers-Urban. The circuit court properly exercised its discretion and awarded Kremers-Urban its costs and disbursements, excluding attorney's fees.

We therefore uphold the judgment of the circuit court in its totality—in respect to the declaration of coverage

have stated that, where the insured successfully defended a declaratory judgment action initiated by the insurer, attorney's fees may be recovered. *Nordby v. Atlantic Mutual Insurance Co.*, 329 N.W.2d 820 (Minn. 1983) ; *Occidental Fire & Casualty Co. v. Cook*, 92 Idaho 7, 435 P.2d 364 (1967) ; *Upland Mutual Insurance, Inc., v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974).

Still other jurisdictions allow attorney's fees to insured when the insurer's refusal to defend was unreasonable and in bad faith. *Kelmo Enterprises, Inc., v. Commercial Union Insurance Co.*, 285 Pa. Super. 13, 426 A.2d 680 (1981); *American Family Mutual Insurance Co. v. Brown*, 631 S.W.2d 375 (Mo. App. 1982) ; *Union Mutual Fire Insurance Co. v. Inhabitants of Town of Topsham*, 441 A.2d 1012 (Me. 1982).

[9] Section 806.04(8), Stats., provides:

"(8) SUPPLEMENTAL RELIEF. Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith."

Neither party contends that attorney's fees may be awarded pursuant to sec. 806.04(8), Stats. Accordingly, our holding today is limited to sec. 806.04(10).

under the policy and in respect to the allowance of attorney's fees in this action.

*By the Court.*—Judgment affirmed.