**UNITED AMERICAN INSURANCE COMPANY, A Delaware Insurance Corporation, Plaintiff-Appellee,**

v.

**Richard D. WIBRACHT and Hilda A. Wibracht, Defendants-Appellants.**

No. 86–3109.

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1987.

Decided Aug. 5, 1987.

Seymour Pikofsky, Pikofsky and Flaherty, S.C., Milwaukee, Wis., for defendants-appellants.

* The Honorable John W. Reynolds, Senior District Judge for the Eastern District of Wisconsin,

Paul G. Kent, DeWitt, Porter, Huggett, Schumacher & Morgan, S.C., Madison, Wis., for plaintiff-appellee.

Before RIPPLE and MANION, Circuit Judges, and REYNOLDS, Senior District Judge.*

REYNOLDS, Senior District Judge.

Plaintiff-appellee United American Insurance Company ("United American") commenced this action in the Western District of Wisconsin against defendants-appellants Hilda A. Wibracht ("Mrs. Wibracht") and her son Richard D. Wibracht. United American sought a declaratory judgment that Mrs. Wibracht was not entitled to hospital and nursing home benefits under the terms of a policy United American had written. The parties filed cross-motions for summary judgment, and the district court ruled that, under the facts presented, United American was obligated to pay hospital benefits, but that Mrs. Wibracht was not entitled to nursing home benefits. The district judge denied the Wibrachts' motion to reconsider his decision denying nursing home benefits, and the Wibrachts have appealed from that decision. The decision of the district court will be affirmed.

## RELEVANT FACTS

United American Insurance Company is a Delaware corporation with its principle place of business in Dallas, Texas. Hilda A. Wibracht, a registered nurse, is now confined in a skilled nursing home in St. Charles, Minnesota, as a result of injuries she suffered in an auto accident. Her son Richard is a citizen of Janesville, Wisconsin, and has power of attorney for the administration of his mother's assets.

On March 20, 1974, Mrs. Wibracht, who was then 64 years old, applied to purchase a United American Medicare Supplement Policy. Pursuant to Wisconsin law, a brochure was attached to the application. The brochure's cover page stated in large, bold-faced letters, that it was a "MEDICARE

is sitting by designation.

COUNTERPART POLICY" with "Hospital and Nursing Home Benefits That Automatically Increase as Corresponding Medicare Coverage Decreases." The second page of the brochure included a paragraph which stated the nursing home coverage as follows: "All nursing home charges in excess of Medicare's daily allowances for confinement in extended care facility from the 21st through the 100th day."

The second page of the brochure also stated:

### "POLICY DOES NOT COVER"

Loss caused by or resulting from alcoholism, narcotic addiction, nervous or mental disorders, dental treatment, rest cure, or any period of hospital or nursing home confinement that daily allowances are not paid under Medicare or loss covered by any Workmen's Compensation or Employers' Liability Laws.

United American issued Mrs. Wibracht a Medicare Supplement Policy on April 16, 1974, with a first-year annual premium of $116. The relevant language of that policy is as follows:

BENEFIT PERIOD means a period which begins ... with the first day a Family Member is confined in a hospital as a resident bed patient as a result of such injury or such sickness and ends at the close of 60 consecutive days on each of which the member was not confined in a hospital or nursing home.

Part 1 HOSPITAL EXPENSE BENEFITS

If a Family Member is necessarily confined as a resident bed patient in a hospital during a Benefit Period for which daily hospital benefits are paid under Medicare, the Company will pay the following items of expense actually incurred during such confinement:

1. The Initial Deductible for the Benefit Period.
2. Hospital charges ... in excess of the daily benefits paid under Medicare during the Benefit Period.

Part 3 NURSING HOME EXPENSE BENEFIT

If a Family Member is necessarily confined as a resident patient in a Nursing Home during a Benefit Period for which daily nursing home benefits are paid under Medicare, the Company will pay the portion of the daily expense incurred in excess of the daily benefit paid under Medicare.

Part 9 LIMITATIONS AND EXCLUSIONS

. . . . .

3. Hospital confinement as a resident bed patient or confinement in a Nursing Home for which daily benefits are not paid under Medicare during a Benefit Period are not covered under this policy....

ENTIRE CONTRACT; CHANGES

This policy, including endorsements and the attached papers, if any, and the application, a copy of which is attached hereto and made a part hereof, constitute the entire contract of insurance.

The front and back pages of the policy state that "THIS POLICY PROVIDES LIMITED SUPPLEMENTAL BENEFITS IN ADDITION TO MEDICARE."

Mrs. Wibracht became a paraplegic as the result of an August 5, 1983, automobile accident, and she was hospitalized for an extended period. She is now necessarily confined at a skilled nursing home in Minnesota and has not been out of the hospital or a nursing home for a period of 60 days since the date of the accident. Medicare made payments of daily hospital or nursing home benefits from August through December of 1983, in March, July, and August of 1984, and in June of 1985. On or about June 10, 1985, Medicare stopped making daily nursing home benefits because Medicare determined that she no longer qualified for such benefits. United American, in turn, began to deny hospital or nursing home payments to Mrs. Wibracht on any days for which payment of hospital or nursing home benefits had not been made by Medicare.

### RESOLUTION IN THE TRIAL COURT

This lawsuit followed the denial of payment. United American sought a court

declaration that "there is no coverage under the policy for charges incurred for any days of nursing home or hospital confinement for which daily benefits are not paid under Medicare." The district court decided the parties' cross-motions for summary judgment by ruling that United American was obligated to pay hospital benefits "where daily benefits have first been paid by the federal Medicare program at any time during the benefit period;" but that United American was not obligated to pay supplemental benefits "for nursing home confinement unless daily benefits are first paid by the federal Medicare program for each day of such confinement."

The Wibrachts moved for reconsideration as to the question of nursing home benefits on the ground that they had recently learned that Mrs. Wibracht was receiving "Part B" benefits under Medicare on a daily basis, including enteral nutrition fluid; that these benefits nearly equalled the amounts previously paid by Medicare as a daily benefit under "Part A" of Medicare; and that Mrs. Wibracht was therefore receiving Medicare benefits each day and was entitled to payment under the policy. "Part A" Medicare benefits refer to payments made for daily charges such as room, board, and care. "Part B" benefits cover such things as the costs of physician's services, surgery, treatment, and other medical services and supplies.

The district judge denied the Wibrachts' motion to reconsider, finding that the Wibrachts had known that Mrs. Wibracht was receiving "Part B" benefits well before his first decision. The district judge also pointed out that the Wibrachts had admitted in their reply brief in support of their motion for summary judgment that "there must be a Medicare Part A or daily benefits payment during a Benefit Period for hospital and nursing home coverage to be afforded under the policy." The district judge further found that the parties had agreed in the course of briefing the cross-motions for summary judgment that, in the words used in the Wibrachts' reply brief in support of their motion for summary judgment: "The 'daily benefits' terms are used to *differentiate* Part A benefits for 'daily

charges' by a hospital or nursing home from Part B benefits for expenses of physicians, surgery, treatment, and other hospital and medical costs."

The Wibrachts have appealed from the district court's decision regarding nursing home benefits, but United American has chosen not to cross-appeal from the district court's decision on hospital benefits.

## INTERPRETATION OF THE CONTRACT

In *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis.2d 722, 351 N.W.2d 156 (1984), the Wisconsin Supreme Court enunciated the principles for construing a contract of insurance under Wisconsin law:

> The words of an insurance contract are to be construed in accordance with the principle that the test is not what the insurer intended the words to mean but what a reasonable person in the position of the insured would have understood the words to mean.... The reasonable expectations of coverage of the insured should be furthered by the interpretation given.... Language in an insurance contract is to be given the common and ordinary meaning it would have in the mind of a lay person.... Words or phrases in a contract are ambiguous when they are fairly susceptible to more than one construction.... Whether ambiguity exists in a contract is a question of law.... Where no ambiguity exists in the terms of the policy, we will not engage in construction, but will merely apply the policy terms.

*Id.* at 735–36, 351 N.W.2d at 163 (citations omitted).

## REASONING OF THE DISTRICT COURT

The district court began its analysis of the policy by reviewing the brochure which both sides in this dispute have agreed plays a role in determining what a reasonable person in the position of Mrs. Wibracht would have understood the words of the policy to mean. The brochure stated, im-

mediately below the boldfaced heading "POLICY DOES NOT COVER," that the policy did not cover any period of hospital or nursing home benefits for which daily allowances were not paid under Medicare. The district court found that even a casual reading of the brochure could not have allowed a reasonable person in Mrs. Wibracht's position to believe that she was receiving protection against catastrophic medical expenses for $116.00 per year.

Turning to the language of the policy itself, the district court found that the language covering nursing home confinement, at Part 3 of the policy, was unambiguous, Part 3 reads as follows:

> If a Family Member is necessarily confined as a resident patient in a Nursing Home during a Benefit Period for which daily nursing home benefits are paid under Medicare, the Company will pay the portion of the daily expense incurred in excess of the daily benefit paid under Medicare.

In the words of the district court, "Where daily nursing home benefits are paid, the plaintiff will pay the daily expenses incurred in excess of Medicare." And conversely, "Where Medicare does not pay daily expenses, those daily expenses will not be paid by the company." The district court found that Mrs. Wibracht was not receiving "daily nursing home benefits" under Medicare and granted the insurer's motion for summary judgment as to that part of the policy.

The district court did, however, grant the Wibrachts' motion for summary judgment as to hospital coverage, finding that the different language at issue required a different result. Part 1 of the policy reads:

> If a Family Member is necessarily confined as a resident bed patient in a hospital during a Benefit Period for which daily hospital benefits are paid under Medicare, the Company will pay the following items of expense actually incurred during such confinement:
>
> 1. The Initial Deductible for the Benefit Period.

> 2. Hospital charges ... in excess of the daily benefits paid under Medicare during the Benefit Period.

The district judge also found this provision unambiguous and read this provision as envisioning a period of hospital charges. If Medicare made daily benefits payments during that period, United American would pay expenses in excess of the daily benefits paid under Medicare during the benefit period. The district judge observed the difference between Part 1 and Part 3 and pointed out that Part 1 could have tracked the language of Part 3, and read, "in excess of each daily benefit paid under Medicare," instead of the language chosen, "in excess of the daily benefits paid under Medicare during the benefit period." As a result, the district judge granted the Wibrachts' motion for summary judgment on the hospital coverage issue.

## ARGUMENT OF DEFENDANTS–APPELLANTS WIBRACHT

On appeal, the Wibrachts argue that Mrs. Wibracht is within the "benefit period" because she has never been outside a hospital or nursing home for more than 60 days since her accident. The Wibrachts argue that Part 3 should be read as containing a conditional clause which must first be satisfied:

> If a Family Member is necessarily confined as a resident patient in a Nursing Home during a benefit period during which daily nursing home benefits are paid under Medicare....

If that conditional clause is satisfied, the payment clause provides that:

> the Company will pay the portion of the daily expense incurred in excess of the daily benefit paid under Medicare.

The Wibrachts argue that Mrs. Wibracht has been confined during a benefit period for which daily benefits are paid under Medicare, arguing that "daily benefits" were paid during her benefit period; not *every* day, but they were paid on some days during the benefit period, and she contends that is sufficient. Having thus satisfied the conditional clause, the Wi-

brachts ask that "the portion of the daily expense incurred in excess of the daily benefit paid under Medicare" be paid, with the Wibrachts reading the second clause as obligating the company to pay whatever Medicare does not pay.

The Wibrachts argue that Part 9, paragraph 3, of the policy does not preclude coverage because it was not found to exclude coverage of hospital expenses by the district court and because its terms have been met. That policy provision provides: "Hospital confinement as a resident bed patient or confinement in a Nursing Home for which daily benefits are not paid under Medicare during a Benefit Period are not covered under this policy...." The Wibrachts also claim to have met the requirements under this exclusion either because some "Part A" daily benefits were paid during the benefit period or because "Part B" benefits are paid every day.

The Wibrachts also contend that the brochure strongly induces an expectation that United American will pay nursing home expenses not paid by Medicare and point to the language on the brochure cover reading: "Hospital and Nursing Home Benefits that Automatically Increase As Corresponding Medicare Coverage Decreases." The Wibrachts argue that the district court placed too much emphasis on the second page of the brochure, while ignoring the bold-faced large type on the cover.

In the alternative, and in their motion for reconsideration, the Wibrachts argue that Mrs. Wibracht does receive "Part B" benefits daily from Medicare and that those payments, as opposed to "Part A" Medicare payments, can also meet the requirement of a "daily benefit" paid under Medicare. As a result, the Wibrachts argue, even if this court finds that the policy only pays on days that Medicare pays, United American must still make payments because Medicare is making payments under "Part B."

## ARGUMENT OF PLAINTIFF–APPELLEE UNITED AMERICAN

The insurer defends the interpretation given the policy by the district court and stresses that "it is fundamental that no contract of insurance should be rewritten by construction to bind an insurer to a risk which it did not contemplate and for which it was not paid." *Amidzich v. Charter Oak Fire Ins. Co.*, 44 Wis.2d 45, 52, 170 N.W.2d 813, 817 (1969) (citation omitted).

United American argues that this policy was inextricably intertwined with the benefit provisions of Medicare, used similar definitions and tied coverage to underlying Medicare coverage on a daily basis. United American points to the limiting language in the policy and the brochure, as well as the relatively small price of the policy when compared to the type of catastrophic coverage the insured now seeks. United American argues that a reasonable person in Mrs. Wibracht's position could not have expected to obtain a regular medical policy for the price of a Medicare supplement policy.

The insurer explains that the cover of the policy notified Mrs. Wibracht that the policy at issue provided only "Limited Supplemental Benefits in Addition to Medicare." United American argues that the second part of Part 3 in the policy is not merely a payment clause as the Wibrachts contend, but it also limits payment to "the *portion of the daily expense incurred* in excess of the daily benefit paid under Medicare." (emphasis added). United American calls particular attention to the word "portion" and argues that this "portion" is only paid "in excess of the daily benefit paid under Medicare." If there is no daily benefit from Medicare, then there is no portion or supplement required under the policy.

United American argues that Part 9, paragraph 3, of the policy also limits payment by stating "confinement in a Nursing Home for which *daily benefits* are *not* paid under Medicare during a benefit period are not covered...." United American rebuts the Wibrachts' interpretation of this exclusion—that it does not apply once *any* payment is made during a benefit period—with three arguments.

First, daily means daily, and if Medicare benefits are not paid on a day, then United

American does not have to pay. Second, because the phrase "benefit period" is, by definition, tied to Medicare benefits, the Wibrachts' construction of a "daily payment" within a benefit period—at least one—would always be present. Coverage would continue indefinitely and long after Medicare had stopped paying. Such a construction would render the exclusion superfluous. Finally, the Wibrachts' construction appears to be based on the notion that once someone is in the "benefit period," United American is required to make payments whether or not Medicare makes a daily payment; but that interpretation ignores the fact that "benefits period" is itself separately defined, and qualified by "daily" and "paid."

Next, United American contends that the brochure also informs the insured of the policy's limitations, telling the insured at page 2 that the policy does not cover any period of hospital or nursing home confinement that daily allowances are not paid under Medicare. The second page of the brochure also includes the explanation that the policy will cover "ALL Nursing Home charges in excess of Medicare's daily allowances for confinement in Extended Care Facility from the 21st through the 100th day," with the time period limited and keyed to the Medicare daily co-insurance amount.

United American next rebuts the Wibrachts' argument that the district court's decision was inconsistent in finding coverage for hospital but not nursing home benefits. Rather than inconsistent, United American contends the court merely gave different readings to different language.

Finally, United American argues that the Wibrachts' argument that her receipt of "Part B" Medicare benefits on a daily basis entitles her to coverage comes too late, and that even if it were not too late, "Part B" benefits are not daily nursing home benefits.

United American first argues that Mrs. Wibracht's motion for reconsideration was insufficient in that she failed to meet her burden of establishing the evidence was new or not previously available through the exercise of diligence. United American next points out that the Wibrachts themselves admitted in the course of briefing the motion for summary judgment that Medicare payment of "Part A" benefits was a prerequisite for payment by United American.

Third, United American argues that although there is no dispute that Mrs. Wibracht receives "Part B" benefits, the question under the policy is whether Medicare is paying daily nursing home benefits, which, as the Wibrachts admitted in their summary judgment briefs, are commonly referred to as "Part A" benefits. There is also no dispute that Mrs. Wibracht is not receiving "Part A" benefits. United American notes that the district court recognized in its motion to reconsider that the parties had known all along that the plaintiff was entitled to, and receiving, "Part B" benefits, but that "[t]hese are not, of course, the daily nursing home benefits contemplated by either the parties or the policy." The district judge rejected as without merit the Wibrachts' most recent argument that reimbursement for medical expenses under "Part B,"—as opposed to room, board, general nursing and miscellaneous services, and supplies under "Part A,"—should be considered as a daily nursing home benefit.

## LEGAL ANALYSIS

■ "The words of an insurance contract are to be construed in accordance with the principle that the test is not what the insurer intended the words to mean but what a reasonable person in the position of the insured would have understood the words to mean." *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis.2d 722, 735, 351 N.W.2d 156, 163 (1984). The judgment of the district court will be affirmed because a reasonable person in the position of Mrs. Wibracht would have understood the policy at issue, and the nursing home provision in particular, to have provided supplemental benefits on those days for which Medicare pays daily benefits. A review of the policy, the brochure, and the application reveals that a reasonable person could not have understood this supple-

mental policy, for an initial premium of $116 per year, to provide full nursing home benefits if Medicare did not first make a daily payment.

The brochure labels the product as a "MEDICARE COUNTERPART POLICY," with "Hospital and Nursing Home Benefits That Automatically Increase as Corresponding Medicare Coverage Decreases." The Policy is a "counterpart" to Medicare, not a general medical or nursing home policy that operates independent of Medicare. The Wibrachts' reliance on the language "Benefits That Automatically Increase as Corresponding Medicare Coverage Decreases" for the proposition that if Medicare pays nothing or runs out, the policy pays everything else indefinitely is unreasonable. That proposed interpretation also ignores the importance of the word "corresponding," and the fact that the policy corresponds to and is contingent upon daily Medicare benefits. Page 2 of the brochure, in admittedly smaller letters, informs the insured that the "POLICY DOES NOT COVER . . . any period of hospital or nursing home confinement that daily allowances are not paid under Medicare. . . ." It also informs the insured that the policy will cover "ALL Nursing Home charges in excess of Medicare's daily allowance for confinement . . . from the 21st through the 100th day." This too put the insured on notice that the policy is tied to and limited by the daily payments and duration of Medicare.

The front and back of the policy, in bold-type, states that "This policy provides limited supplemental benefits in addition to Medicare." Part 3 of the policy, which sets forth nursing home benefits, states that if an insured is confined during a benefit period "for which *daily nursing home benefits are paid under Medicare,* the company will pay the *portion of the daily expense* incurred *in excess of the daily benefit* paid under Medicare." (emphasis added). The district court judge properly found this provision to be clear, with a proportionate payment to be made under the policy for those days on which Medicare had paid a daily benefit. The requirement of payment being made for each day

by Medicare is also reflected in Part 9, paragraph 3, of the policy, which provides that the policy does not cover "confinement in a Nursing Home for which daily benefits are not paid under Medicare during a Benefit Period. . . ."

Contrary to the Wibrachts' argument, the district judge's finding that the policy covers hospital expenses, even for those days for which a daily payment is not made by Medicare, does not affect the operation of Part 9, paragraph 3. Part 9, paragraph 3, did not preclude payment under the hospital language, and does under the nursing home language, because different words and conditions are set forth in the two provisions, presumably to cover the different risks underwritten by the insurer. To the extent that the hospital payment language, which was properly interpreted by the district judge to require policy payments for any benefit period during which daily Medicare payments were made, is in conflict with the exclusion in Part 9, the conflict must be resolved against the insurer who drafted the contract. There is no such conflict between Part 9 and Part 3 of the nursing home provisions because both require daily payments to be made before the policy provides payment for that day.

■ Having determined that Mrs. Wibracht is only entitled to payment under the policy for nursing home benefits for those days which she actually receives payment of daily benefits under Medicare, we turn to the Wibrachts' attempt to argue, on their motion to reconsider, that "Part B" benefits under Medicare can qualify as the "daily benefits" which trigger the policy payment.

The record below reveals that both parties were aware that Mrs. Wibracht was receiving "Part B" benefits from Medicare on a daily basis before, during, and after the motion for summary judgment was briefed. The parties dispute when the Wibrachts learned of the award of the most recent, and most expensive, "Part B" benefit; daily benefits for enteral nutrition. The attorney for the Wibrachts appeared to assert at oral argument that the provision of enteral nutrition, which has resulted in a

corresponding reduction in the expense of boarding Mrs. Wibracht, was a significant change that resulted in his motion to reconsider. The Wibrachts could then argue that the difference between "Part A" benefits and "Part B" benefits had so narrowed that she was now receiving as a "Part B" benefit, something that was normally covered under "Part A," namely, board. As a result, she had nearly the equivalent of "Part A," or daily benefits, and the payment provisions of the policy should commence and the district judge wrongfully denied the motion to reconsider.

The problem with the Wibrachts' argument is that both sides and the judge were aware at the time the original motion was briefed and decided that Mrs. Wibracht was receiving "Part B" benefits, yet the Wibrachts nonetheless admitted that "Part A" benefits were the necessary "daily benefits" as that phrase is used in the policy. The motion to reconsider did not follow from some combination of new evidence and a new legal argument that had not been previously applicable, but was based upon stronger evidence of something already known—Mrs. Wibracht received "Part B" benefits—in combination with the complete reversal of an earlier legal admission; that "Part B" benefits were not sufficient under the policy. The Wibrachts failed to produce, before the trial court or this court, sufficient reasons why they should be able to submit additional evidence which was for the most part, if not entirely, not new, or a legal argument which directly contradicts a previous admission the Wibrachts had made in briefing and in discovery.

Absent such a showing, the district judge acted within his discretion in denying the motion to reconsider.[**]

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[**] The district judge nonetheless appears to have considered the substance of the motion and determined that both the policy and the intent of the parties was that the phrase "daily benefits" under Medicare meant "Part A" benefits or generally, room and board.