KOHLENBERG, Appellant, v. AMERICAN PLUMBING SUPPLY COMPANY, Respondent.

*No. 75–881. Submitted on briefs February 8, 1978.—
Decided March 7, 1978.*
(Also reported in 263 N.W.2d 496.)

For the appellant the cause was submitted on the briefs of *Robert K. Steuer* and *Weiss, Steuer, Berzowski & Kriger* of Milwaukee.

For the respondent the cause was submitted on the brief of *E. H. Snyder* of Milwaukee.

HANLEY, J. The following issues are raised on appeal:

1. Whether the trial court erred in concluding that the plaintiff's oral statements modified the renewal note so as to permit the defendant to prepay the amount due?

2. Whether the tender of an amount less than that due on the note, at the time of tender, was sufficient to discharge the defendant's liability for interest due on the amount tendered and for attorney's fees?

3. Whether the plaintiff was entitled to reasonable attorney's fees?

*Oral Modification of Terms of Payment*

At the end of the trial, the court made the following findings and conclusions:

"THE COURT: No. 1, I find and determine that the parties hereto entered into an installment promissory

note on November 26, 1974, although the actual agreement was signed at a date later than that.

"I also find and determine by the credible evidence submitted to this Court that Mr. Kohlenberg, Jack Kohlenberg, did tell the officers of the defendant, American Plumbing Supply, that they could get the money elsewhere.

". . . .

"MR. STEUER: [Plaintiff's counsel] Has your Honor concluded as a matter of law that the statement as made constituted an amendment or a material modification of the *original note?*

"THE COURT: It was a modification of the *original note* by the individual concerned which was acquiesced into by the other parties to the note, the other party being the corporation but through its corporate officers." (Emphasis supplied.)

The original note, in language which mimicked that of the underlying sales contract, provided as follows:

"AMERICAN PLUMBING SUPPLY CO., a Wisconsin corporation, (hereinafter referred to as 'American'), promises to pay to JACK KOHLENBERG, (hereinafter referred to as 'Kohlenberg'), the sum of Two Hundred Seven Thousand Twenty ($207,020.00) Dollars, with interest at the rate of four (4%) per cent per annum.

"1. *Payment:* American shall pay Kohlenberg the sum of Twenty-five Thousand ($25,000.00) Dollars per year, said sum to include principal and interest, at the rate of Five Hundred ($500.00) Dollars per week commencing December 1, 1969, for the first fifty (50) weeks of each year, and the unpaid balance remaining as of December 1, 1974, shall then be due and payable unless renewed in accordance with the terms hereof.

"2. *Option to Renew:* American shall have the option to renew this note in the amount of the unpaid balance due as of December 1, 1974, for an additional period of five (5) years from said date with interest on said balance due in the amount of the then prevailing prime rate plus one (1%) per cent per annum. Said balance due shall be paid in the amount of Twenty-five Thousand ($25,000.00) Dollars per year, including principal and interest, at the rate of Five Hundred ($500.00) Dollars per week commencing December 1, 1974, for the first fifty (50) weeks of each year, and the unpaid

balance remaining as of December 1, 1979, shall then be due and payable."

Thus, the parties agreed that at the end of the term of this note, American had the option of doing one of two things. First, it could pay off the remaining balance of this note, thus fulfilling its obligations under the original note and underlying contract at that time. Second, it could renew the note for the amount of the unpaid balance and defer completion of its payment up to another five years. American, however, had chosen neither course of action by the following March, when the plaintiff's attorney submitted to the defendant's attorney a proposed renewal note. Immediately thereafter, and before the renewal note was executed and delivered, the conversation on which the trial court so heavily depended took place. During this conversation, the plaintiff and Mr. Gruell discussed the terms of the proposed renewal note, and on being informed that the rate of interest would be 11-½%, Gruell indicated that he thought he could get the funds at a lower rate from a bank. To this, the plaintiff responded: "Well, go ahead and get it. That's your privilege." Subsequently, the defendant executed and delivered the renewal note proposed by the plaintiff modified only with respect to the amount thereof.

Generally, the parties to a note may modify by subsequent oral agreement the terms of a promissory note.

"Like any other contract a bill or note, whether negotiable or not, is subject to subsequent modification upon sufficient consideration, and an expression of the subsequent agreement by a marginal writing or an indorsement will modify the contract as expressed in the body of the instrument. A written contract may be modified, rescinded, or discharged by subsequent oral agreement and, as between immediate parties, this principle is applicable to negotiable instruments." 11 Am. Jur.2d,

*Bills and Notes* §297 (1963); *accord,* 10 C.J.S., *Bills and Notes* §264 (1938); secs. 403.118, 403.119, Stats.

Nevertheless, it is generally held that the existence of an agreement which is in substitution or modification of a previous contract must be established in the same way as any other contract. "No one will be held to have surrendered or modified any of his contract rights unless he is shown to have assented thereto in a manner that satisfies the requirements of a valid contract." A. Corbin, *Corbin on Contracts* §1293 at 1063 (1 vol. ed., 1952).

The determination that the parties to a written contract have entered into a subsequent oral agreement to rescind or modify the previous contract is a factual determination which will not be reversed on appeal unless it is against the great weight and clear preponderance of the evidence. *See ABC Outdoor Advertising, Inc. v. Dolhun's Marine, Inc.,* 38 Wis.2d 457, 460–62, 157 N.W.2d 680 (1968). In the instant case, the trial court determined that the parties agreed to modify the payment terms of the original note, and apparently the underlying sales contract, so as to permit the defendant to prepay the loan even after a renewal note was executed.

However, we think that this determination was against the great weight and clear preponderance of the evidence. At the time of the conversation here in question, American had taken no formal action regarding its obligations at the expiration of the original note. Although the record does not clearly indicate whether American continued to make the $500 weekly payments after the due date of the original note, the record does indicate that the plaintiff, if only by acquiescence, extended the time during which American could choose the method of satisfying its obligation under this note until March, 1975. At that time, the plaintiff submitted to

American a proposed renewal note. Within this context, therefore, the plaintiff's statement that American could get the money to pay off the outstanding balance elsewhere did not modify the original note or underlying sales contract in any respect. Rather, it merely affirmed the terms of those writings: that American could either pay off the outstanding balance or execute and deliver a renewal promissory installment note. The record also indicates that the plaintiff neither anticipated nor desired American's payment in full, but this evidence undermines, rather than supports, a determination that the plaintiff intended to permit the defendant to execute a renewal note and, shortly thereafter, pay the balance outstanding.

Therefore, insofar as the trial court concluded that the plaintiff agreed to a modification of the payment terms of the original note, its determination was against the great weight and clear preponderance of the evidence.

With respect to the renewal note, the efficacy of the plaintiff's statements to modify its terms of payment must also be questioned. This note was executed and delivered after the plaintiff's statements and, like its predecessor, provided for weekly installment payments of $500 and was silent with respect to the defendant's right to make prepayment.

The plaintiff contends that his oral statement could not be considered as modifying the payment terms of the renewal note by reason of the parol evidence rule.

This court recently stated the parol evidence rule in *Production Credit Association v. Rosner*, 78 Wis.2d 543, 547, 255 N.W.2d 79 (1977), as follows:

" 'When the parties to a contract embody their agreement in writing and intend the writing to be the final expression of their agreement, the terms of the writing

may not be varied or contradicted by evidence of any prior written or oral agreement in the absence of fraud, duress or mutual mistake.' "

The rule comes into operation generally when there is a single and final memorandum of the understanding of the parties:

"The rule as applied to contracts is simply that as a matter of substantive law, a certain act, the act of embodying the complete terms of an agreement in writing (the 'integration'), becomes the contract of the parties . . . Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself." 4 S. Williston, *The Law of Contracts* §631 at 959–60 (3rd ed. 1961).

Thus, whenever a party invokes the parol evidence rule, the initial question "is whether the parties intended the written agreement to be final and complete or 'integrated' or whether they intended any prior agreements to be part of their total agreement." *Federal Deposit Insurance Corp. v. First Mortgage Investors,* 76 Wis.2d 151, 157, 250 N.W.2d 362 (1976).

Here, the trial court made no finding on the factual issue of integration. Although in *First Mortgage Investors, supra,* we remanded the case for further factual findings relating to the parties' intent to integrate their agreement, under the facts of this case further findings are not necessary. The terms of the renewal note which the defendant contends were modified by the plaintiff's oral statements are substantially identical to those found in the underlying contract and original note. In addition, the plaintiff testified that during his conversation with Mr. Gruell, he stated, "For the last five years you've had a big sum of money that you paid no interest on and you held me to it . . . Now there's a new note and

the agreement that—that the interest would be as the note said, that since I had held to my promise, well, you should hold to yours." This part of the conversation between plaintiff and Gruell was not denied by Gruell. Under these circumstances, the evidence adduced at trial was clearly insufficient to support a finding that the parties had agreed to payment terms other than those appearing in the renewal note even if that note was not an integrated document.

Finally, the defendant attempts to support the trial court's conclusions on the theory of estoppel. From the record we conclude that the defendant's reliance on the doctrine of estoppel is without merit. The defense of equitable estoppel consists of action or non-action which, on the part of one against whom estoppel is asserted, induces reliance thereon by the other, either in action or non-action, which is to his detriment. *Chicago & Northwestern Transportation Co. v. Thoreson Food Products, Inc.,* 71 Wis.2d 143, 153, 238 N.W.2d 69 (1976). It is elementary, however, that the reliance on the words or conduct of the other must be reasonable (*Chicago & Northwestern Transportation Co. v. Thoreson Food Products, Inc., supra* at 154) and justifiable (*Matter of Alexander's Estate,* 75 Wis.2d 168, 183–84, 248 N.W.2d 475 (1977)).

Here, the defendant's reliance was neither reasonable nor justifiable. As noted above, the plaintiff's statement, considered in context, was merely a recitation of the defendant's options under the original note and contract. Moreover, the defendant did not rely on the plaintiff's statements by applying for the loan until late July, 1975, two months after the renewal note was executed and delivered.

We conclude that the trial court's determination that the parties agreed to modify the terms of payment was

error. However, under the facts of this case a remand for fact-finding is not necessary.

*Tender of Payment*

The trial court also concluded that the defendant, by tendering a check to the plaintiff in the amount of $43,-025.84, stopped the running of interest on that amount due on the date of tender.

The circumstances under which a tender of payment will arrest the accrual of interest are set forth in sec. 403.604, Stats.:

"403.604   Tender of payment.   (1) Any party making tender of full payment to a holder *when or after it is due* is discharged to the extent of all subsequent liability for interest, costs and attorney's fees.

"(2) The holder's refusal of such tender wholly discharges any party who has a right of recourse against the party making the tender.

"(3) Where the maker or acceptor of an instrument payable otherwise than on demand is able and ready to pay at every place of payment specified in the instrument when it is due, it is equivalent to tender."   (Emphasis supplied.)

Under the facts of this case, there are two reasons why the defendant's tender was not sufficient to arrest the accrual of interest on the tendered amount. First, as required by sec. 403.604, Stats., the tender was not made "when or after" it was due. Because in the absence of an agreement to the contrary a maker of an installment promissory note does not have the right to prepay the amount owed, a tender of prepayment should not arrest the accrual of interest. Hart and Willier, *Commercial Paper Under the Uniform Commercial Code,* §5.02[1] (1976). Second, even if the plaintiff had agreed to permit a prepayment of the amount due, the amount tendered by the defendant in this case was not a "full payment." The evidence adduced at the trial disclosed that at the time of this tender, $43,333.98 was outstanding;

$43,238.62 in principal and $95.36 in interest. The amount tendered was $308.14 less than that owed. Also, the check which was tendered the plaintiff has the following restrictive endorsement: "In full payment in satisfaction of any and all claims whatever against American Plumbing Supply Company, Clarence Gruell and Joseph Siegel, jointly and severally." Because the amount tendered did not represent the "full payment . . . of . . . all claims whatever against American," the tender failed to call into effect the provisions of sec. 403.604 to halt the accrual of interest.

This result is consistent with the analogous situation present in *Security Savings & Loan Association v. Wauwatosa Colony, Inc.,* 71 Wis.2d 174, 237 N.W.2d 729 (1975). There, the debtor proffered his mortgage lender a check in the amount of $40,605.55, which bore the notation, "mortgage principal balance in full." This represented the outstanding balance due two weeks earlier. In the interim, however, the lender had advanced an additional sum to pay real estate taxes. The initial tender was rejected. Later, the debtor reimbursed the lender for the tax advance, and again tendered the check. The lender again refused the tender because it did not include the amount of interest which had accrued between the first and second tender. As a result, neither tender operated to halt the accrual of interest on the amount:

> "The presentation of this check . . . , still containing the statement on it that it was payment of 'mortgage principal balance in full,' in fact at no time represented payment of the amount due. *Haddow v. J. L. Owens Co.* (1920), 172 Wis. 391, 179 N.W. 508. The accrual of interest was not halted." *Security Savings & Loan Association v. Wauwatosa Colony, supra* at 185.

As in *Wauwatosa Colony,* the amount tendered here did not represent the full payment of all of the claims the plaintiff had against the defendant. Thus, the trial court

erred in holding that the contract interest on the amount offered was halted at the time of tender.

*Attorney's Fees*

The trial court granted the plaintiff statutory attorney's fees and costs based upon the $308.14 found then to be due the plaintiff under the note.

The plaintiff commenced this action to enforce his rights under the renewal installment promissory note. This note was silent regarding attorney's fees and cost of collection. In his complaint, however, the plaintiff alleged the existence of a security agreement which secured the amount due on the note. The security agreement provided:

> "(c) Expenses and Application of Proceeds. Debtor shall reimburse Bank for any expenses incurred by Bank in protecting or enforcing its rights under this Agreement including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, holding, preparing for disposition and disposing of the collateral."

This security agreement was a standard form agreement, and the word "bank" referred to the plaintiff, Kohlenberg.

It is generally held that the law does not recognize attorney's fees as recoverable unless authorized by statute or contract, except when they are the natural and proximate result of a wrongful act by the defendant which involved the plaintiff in litigation with other parties. *City of Beloit v. Town of Beloit*, 47 Wis.2d 377, 392, 177 N.W.2d 361 (1970); *Widemshek v. Fale*, 17 Wis.2d 337, 342, 117 N.W.2d 275 (1962). Here, the plaintiff argues that sec. 409.504(1)(a), Stats. authorizes the award of reasonable attorney's fees in this case. This section provides:

"409.504 Secured party's right to dispose of collateral after default; effect of disposition. (1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to ch. 402. *The proceeds of disposition shall be applied in the order following to:*

"(a) *The reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorneys' fees and legal expenses incurred by the secured party; . . .*" (Emphasis supplied.)

However, this section, as well as the security agreement, clearly relates to the expenses, including attorney's fees, of liquidating the collateral, i.e., exercising the rights arising from the terms of the security agreement. Neither relates to the expenses of a suit on a collateral promissory note. Therefore, the trial court did not err in limiting the plaintiff's recovery of expenses and attorney's fees to those provided in sec. 814.04, Stats.

Therefore, for the reasons set forth above, we conclude that the plaintiff is entitled to recover the difference between the whole of the principal and interest due on the note as of the date of the court ordered payment and the amount paid pursuant to that order, with interest thereon at the contract rate from the date of said payment to the date of the entry of judgment, together with statutory costs computed on the recovery as modified.

*By the Court.*—Modified and affirmed.