Constance GAVCUS, Plaintiff-Appellant,

v.

Lillian POTTS and Lawrence (Rudy)
Potts, Jr., Defendants-Appellants.

No. 86–1165.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 9, 1986.

Decided Dec. 18, 1986.

As Amended Dec. 22, 1986.

James R. Long, James R. Long Law Office, Appelton, Wis., for plaintiff-appellant.

Burton A. Strand, Milwaukee, Wis., for defendants-appellees.

Before POSNER and FLAUM, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Constance Gavcus brought an action in district court against members of the Potts family for trespass and unlawful removal of silver coins from her home.[1] The jury returned a special verdict finding an unauthorized removal of property and awarding Mrs. Gavcus the cost of installing new locks and an alarm, attorney's fees incurred in a prior action concerning the silver coins, and punitive damages. The district court set aside the jury's damage awards and entered judgment for Mrs. Gavcus for nominal damages of one dollar. Mrs. Gavcus appeals from that judgment.

Mr. Gavcus died in March of 1981. Lillian Potts was Mr. Gavcus' daughter by a prior marriage and was a residual benefi-

ciary under her father's will. Lillian's family[2] attended his funeral and left several days afterwards after staying with Mrs. Gavcus in her home. The Potts returned to Mrs. Gavcus' home the day after they left and, in her absence, removed a large quantity of silver coins valued at more than $150,000. The deputy who investigated the removal of the coins contacted Mrs. Potts, who later returned the coins to the sheriff's office. A couple of weeks later, Mrs. Gavcus hired an attorney to get the coins back for her. The attorney initiated a proceeding pursuant to § 968.20 of the Wisconsin Statutes for return of the coins.[3] The proceeding under § 968.20 was merged with the probate proceeding in the Circuit Court of Waupaca County, which had begun the month after Mr. Gavcus died. In the probate proceeding Mrs. Potts challenged the ownership of the coins, which Mrs. Gavcus asserted were her individual property. If the coins were jointly owned by Mr. and Mrs. Gavcus or were the property of the estate instead of being Mrs. Gavcus' individual property, we are told that Mrs. Potts' share under the will would have increased.[4] The circuit court determined that the coins belonged to Mrs. Gavcus individually and ordered their return pursuant to the § 968.20 motion. Mrs. Gavcus then brought the suit at bar for damages, including the attorney fees she incurred in the prior litigation.

I

Mrs. Gavcus did not claim any physical injury to the real property. The court did

1. Jurisdiction is founded in diversity. Both parties agree that the law of Wisconsin governs substantive questions.

2. Other members of the Potts family were also sued in the action at bar, but only Lillian and one of her sons, Rudy, remain as defendants.

3. Section 968.20 allows for the return of seized property. "Any person claiming the right to possession of [seized] property ... may apply for its return to the circuit court...." The circuit court then gives notice to the district attorney and all interested persons and holds a hearing on ownership. If right to possession is proved, the court orders its return if the property is not needed as evidence or if "[a]ll proceedings in which it might be required have been completed." Wis.Stat. § 968.20(1) and (1)(b)

(1981). The record does not detail the need for a proceeding under § 968.20. Conceivably criminal charges against the Potts may have been contemplated. Otherwise the sheriff would have no interest except to be assured that he delivered the coins to their rightful owner.

4. We were told at oral argument that under the will Mrs. Gavcus was to receive one-half of the estate, reduced by whatever was held in joint tenancy. The remainder was to be held in trust and distributed at Mrs. Gavcus' death equally between Mrs. Potts and Mrs. Gavcus' son. Thus, if the coins were either Mr. Gavcus' individual property or jointly held, Mrs. Potts would have received a greater share of the estate.

allow her to offer evidence of the cost of new locks and the burglar alarm she installed after the removal of the coins, and of the amount of attorney's fees incurred in the earlier litigation. Apparently the district court had some doubt as to the propriety of these items of damage and chose to admit the evidence and submit questions concerning those items in a special verdict, and to address the legal questions after the verdict was returned. The appeal arises from the court's determination that these items were not properly recoverable as damages. The jury had awarded by special verdict $3,126 for the cost of locks and a burglar alarm and $12,000 in attorney's fees.

■■■ Nominal compensatory damages can be awarded when no actual or substantial injury has been alleged or proved, since the law infers some damage from the unauthorized entry of land. Additionally, compensatory damages can be awarded for actual or substantial injury to realty. These latter damages are generally measured by the cost of restoring the property to its former condition or by the change in value before and after the trespass. Consequential damages can also be recovered for a trespass, since a trespasser is liable in damages for all injuries flowing from his trespass which are the natural and proximate result of it. One such compensable result of a trespass is personal injury to the owner of the land. If a trespass causes mental distress, the trespasser is liable in damages for the mental distress and any resulting illness or physical harm. 22 Am.Jur.2d *Damages* § 136; 38 Am.Jur.2d *Fright, Shock, and Mental Disturbance* § 30; 75 Am.Jur.2d *Trespass* § 53.

■■■ The installation of locks and a burglar alarm was not a repair of physical damage, and the cost was not recoverable as compensation for injury to property. Mrs. Gavcus' theory is that the trespass had caused an impairment of her sense of security and that the installation became reasonably necessary on account of that impairment.

We reject the theory, however, for two reasons. Impairment of her sense of security would amount, if anything, to a type of emotional distress. Mrs. Gavcus was not prepared to produce medical or other expert testimony on the subject. Judge Gordon ruled that lay evidence would be inadmissible, and Mrs. Gavcus has not argued the ruling was erroneous. Thus there was a failure of proof as to the nature, extent, and causation of any emotional distress, or cost of required treatment.

Second, assuming that she could have proved that the trespass caused increased nervousness, uneasiness, and worry, she cites no authority, nor was any authority found, which shows that the cost of an improvement to property intended to alleviate distress of that type would be properly allowable as damages.

Mrs. Gavcus argues, however, that Wisconsin has expanded the scope of damages for which a plaintiff may receive compensation in a trespass action, citing *Prahl v. Brosamle*, 98 Wis.2d 130, 295 N.W.2d 768 (Ct.App.1980). She argues that *Prahl* expands the scope of damages to include damages for nonphysical injury, and then contends that she experienced such injury because her ability to enjoy her property had been impaired. Disregarding the fact that *Prahl* is the decision of an intermediate court and the issue has not yet reached the Supreme Court of Wisconsin, we do not think that *Prahl* applies to the case at bar.

In *Prahl*, the defendant news reporter entered the plaintiff's property while investigating a police response to a call that young boys had been shot at from the plaintiff's property. He later broadcast an allegedly defamatory statement about the plaintiff based upon the information he obtained while on the plaintiff's property. The trial court found that the plaintiff had failed to show any damage to the premises and that the damage, if any, from the broadcast was caused by the defendant's presence on the property. The trial court concluded that any injury caused by the

report was not compensable under a trespass claim.

The Wisconsin Court of Appeals noted, however, that compensatory and punitive damages have been recovered from defendants in similar trespass situations. *See Belluomo v. KAKE TV & Radio,* 3 Kan. App.2d 461, 596 P.2d 832 (1979); *Le Mistral, Inc. v. Columbia Broadcasting,* 61 A.D.2d 491, 402 N.Y.S.2d 815 (1978). Both of the cited cases involved situations in which members of the news media entered a plaintiff's property and caused non-physical harm. The Wisconsin Court of Appeals indicated that "extension to include nonphysical harm from an intrusion of the type involved here is reasonable. To allow only nominal damages under the circumstances presented because of lack of physical harm would permit the trespasser to enjoy the benefits of his tort without fully compensating a plaintiff for his loss." *Prahl,* 98 Wis.2d at 153, 295 N.W.2d at 781–82. The court of appeals granted a new trial on the trespass issue, extending the type of harm that is compensable in a trespass action to nonphysical harm of the type involved in *Prahl.*

The court in *Prahl* specifically confined the type of harm that is compensable to the harm suffered as a result of an unlawful entry at the hands of a member of the news media. The facts in *Prahl* are easily distinguishable from the case at bar and the Wisconsin appellate court gave no indication that damages could be awarded for anything other than the type of harm involved in that case. Assuming that the theory of *Prahl* would be followed by the Supreme Court of Wisconsin, we are not persuaded that the theory would extend to damages for a plaintiff's loss of a sense of security in her home.

## II

In Wisconsin, attorney's fees incurred in a prior action are allowable as damages in a subsequent action only if the prior litigation was the natural and proximate result of the subsequent defendant's wrongful act and involved the plaintiff and a third party.

*Kremers-Urban Co. v. American Employers Ins. Co.,* 119 Wis.2d 722, 744–46, 351 N.W.2d 156, 168 (1984); *Kohlenberg v. American Plumbing Supply Co.,* 82 Wis.2d 384, 399, 263 N.W.2d 496, 503 (1978); *Widemshek v. Fale,* 17 Wis.2d 337, 342, 117 N.W.2d 275 (1962). Thus, to recover the $12,000 in attorney's fees which the jury awarded, Mrs. Gavcus must show that (1) because of the defendants' unlawful removal of the coins, (2) she became involved in litigation with a third party. We will first examine the requirement that the prior litigation involve a third party.

■ For a plaintiff to receive attorney's fees for prior litigation, the prior litigation must have been between the plaintiff and a third party; it cannot have been between the same parties that are involved in the subsequent lawsuit. *Fehring v. Republic Ins. Co.,* 118 Wis.2d 299, 316, 347 N.W.2d 595, 603–04 (1984); *Cedarburg Light & Water Comm'n v. Glens Falls Ins. Co.,* 42 Wis.2d 120, 125, 166 N.W.2d 165, 168 (1969); *Baker v. Northwestern Nat'l Casualty Co.,* 26 Wis.2d 306, 320, 132 N.W.2d 493, 500–01 (1965). In the above cited cases, the questions of whether third parties were involved in the prior litigation were relatively easily answered. The question is not quite so easily answered here.

■ Mrs. Gavcus asserts that the sheriff was the required third party. The sheriff, however, did not actively participate in the litigation, and seems to have been a mere stakeholder. By September of 1981, Mrs. Potts had appeared in the probate proceeding, seeking a determination of the title to the silver coins. Apparently, had the coins been the joint property of both Mr. and Mrs. Gavcus or an asset of the estate, Mrs. Potts' residual share would have been increased. Sometime between mid-March and December 1, 1981, the silver coins were transferred from the sheriff's possession to the possession of the personal representative. At the end of July, 1982, a trial was held on the issue of the ownership of the silver. The circuit court found that the coins were Mrs. Gavcus' individual proper-

ty, obtained either through her own efforts or as gifts from Mr. Gavcus and ordered them returned to Mrs. Gavcus pursuant to her attorney's motion under § 968.20. The attorney's fees were incurred in this litigation over ownership of the coins. Whether the silver was owned jointly by Mr. and Mrs. Gavcus, was an asset of the estate, or was owned individually by Mrs. Gavcus was the essence of this entire dispute. The dispute was between Mrs. Potts and Mrs. Gavcus, both of whom were beneficiaries and both of whom are involved as parties in the case at bar. Since both the prior and present actions are between the same parties, attorney's fees are not recoverable.

There is some authority in Wisconsin which suggests that prior actions against third parties may be separated into those for which attorney's fees are available and those for which attorney's fees are not available. In *Baker v. Northwestern National Casualty Co.*, the plaintiff and his insurance company had been sued in an action in which the defendant was awarded damages beyond the plaintiff's policy amount. The plaintiff thereafter became involved in litigation concerning the garnishment of his wages, in the creation of a trust in favor of his mother, which required a divestment of some of his assets, and in obtaining legal advice about declaring bankruptcy. The plaintiff later sued his insurance company for the coverage and requested attorney's fees for the overage suit. Although the supreme court ruled that attorney fees were not available for the coverage action itself, it suggested that fees might be obtained for some of the other actions in which the plaintiff had become involved. While in *Baker*, fees were not available for various other reasons, the court did suggest that where some portions of a plaintiff's prior litigation met all the requirements, fees could be awarded for those portions. *Baker*, 26 Wis.2d at 320–21, 132 N.W.2d at 500–01. Thus the district court might conceivably have apportioned the fees between those made necessary by the sheriff's involvement and those incurred in trying the ownership issue in the probate proceeding.

Mrs. Gavcus' attorney, however, did not make a claim for such an apportionment in either the district or this court, and it is likely that the portion of fees incurred solely in the proceeding against the sheriff was insubstantial in any event.

Even if the litigation over ownership had involved a third party, Mrs. Gavcus did not fulfill the other requirement for recovery of attorney's fees—the requirement that the prior litigation was a natural and proximate result of a wrongful act by the defendant. To fulfill this requirement, Mrs. Gavcus must show that the defendants' unauthorized removal of the coins caused her to enter into the litigation. Analysis of the facts shows that the prior litigation was not proximately caused by the defendants' removal of the coins.

■ Mrs. Potts knew of the coins' existence prior to her removal of them from the Gavcus home. The litigation was caused by her claim that the coins were jointly owned by her father and Mrs. Gavcus or were the property of the estate, not by her resort to self-help to obtain possession of them. Since the prior litigation did not result from the taking of the silver, the second part of the test is not met and attorney's fees cannot be awarded.

Attorney's fees are not available because the prior action was not against a third party and was not naturally and proximately caused by the Potts' conduct. Both parties agree that the award of punitive damages could not be sustained unless compensatory damages had been awarded. *Widemshek*, 17 Wis.2d at 340, 117 N.W.2d at 276.

The judgment appealed from is AFFIRMED.