Henrici's Management Corporation, Plaintiff-Appellant-Cross-Respondent,
Robert J. Prosser, Plaintiff,
v.
Richard F. Ingram, Defendant-Respondent-Cross-Appellant.
2006AP2240
Court of Appeals of Wisconsin, District IV.
August 23, 2007.
Before Higginbotham, P.J., Dykman and Bridge, JJ.
¶ 1 BRIDGE, J.
Henrici's Management Corporation appeals an order on cross-motions for summary judgment holding that it does not have a contractual right to prepay a promissory note to Richard Ingram which was executed as part of a stock redemption agreement. We conclude that the promissory note is unambiguous and does not provide such a right. We therefore affirm on this issue.
¶ 2 Richard Ingram cross-appeals the denial of his motion for summary judgment regarding a restrictive covenant which was made part of the stock redemption agreement. Ingram contends that the restrictive covenant prohibits Henrici's Management Corporation from raising the compensation of its president Robert Prosser without Ingram's consent until such time as Ingram is paid in full under the stock redemption agreement. We conclude that the restrictive covenant is unambiguous and supports Ingram's position. We therefore reverse on this issue.

Background
¶ 3 Henrici's Management Corporation ("HMC") operates restaurants in Wisconsin and Illinois. In 1999, HMC's six shareholders agreed on a succession plan under which shareholder Robert Prosser would ultimately obtain ownership and control of HMC.
¶ 4 The plan was to be executed in two stages. The first stage occurred on June 30, 1999, when HMC purchased the shares held by three of the original shareholders, leaving Prosser and a second shareholder holding non-voting minority shares and Ingram with majority ownership. HMC entered into a stock redemption agreement ("SRA") with the three departing shareholders, consistent with the plan. A portion of the purchase price for their shares was paid through three promissory notes, each of which expressly permitted prepayment.
¶ 5 At that same time, HMC entered into a separate SRA with Ingram which provided that Ingram would not immediately sell his stock, but agreed to do so three years later. Pursuant to the SRA, HMC would purchase Ingram's shares on June 30, 2002, for at least $659,080.00 to be paid half in cash and the balance by promissory note. Effective on that date, Ingram was to resign as an officer and director of HMC.
¶ 6 The 1999 SRA between Ingram and HMC included as an exhibit a proposed form for the promissory note which was to be executed by HMC at closing on June 30, 2002. The note was to carry interest at 8% per year over five years. It contained a paragraph relating to prepayment which stated as follows:
All payments shall first be applied to accrued interest, and the remainder shall be applied to the principal balance. The indebtedness evidenced by this Note may not be prepaid at any time in whole or in part without the written consent of the Holder.
¶ 7 In the spring of 2002, Ingram and HMC agreed to renegotiate the terms of the buyout of Ingram's stock. Under the terms of the new agreement, HMC would pay the entire purchase price under a ten-year promissory note with interest at 12%. The amended SRA, like the original 1999 SRA, also contained several restrictive covenants, one of which relates to restrictions on Prosser's compensation as an employee of HMC and will be discussed more fully below. Ronald Berman, attorney for HMC, drafted the necessary documents.
¶ 8 Prior to the time the amended SRA was executed, Attorney Berman sent a letter to Prosser, Ingram, and Vogel setting out the various terms of the modified agreement. Berman's letter stated in part:
PrepaymentsAbility to make: The ability of [HMC] to make prepayments should be at the sole discretion of [HMC], according to [Prosser], without any veto by [Ingram]. If they can find the money, [Prosser] wants to be able to pay down the note. The requirement for [Ingram's] approval is provided for in the second sentence of the second paragraph of the note (Exhibit A). As I understand it, [Ingram] has agreed to waive any requirement for his approval for a prepayment. A CHANGE IS REQUIRED TO PROPOSED DOCUMENTS. (Emphasis in original).
Along with the letter, Attorney Berman included a draft promissory note form. The 2002 draft note contained the same language as was included in the 1999 note, except that a line had been drawn through the last sentence as follows: "The indebtedness evidenced by this Note may not be prepaid at any time in whole or in part without the written consent of the Holder."
¶ 9 Ingram and Berman discussed prepayment after Ingram received Berman's letter. Berman told Ingram that HMC had insisted on removing the language that expressly prohibited prepayment. Ingram asserts that Berman tried to talk him into permitting prepayment, and he refused. Ingram asked Berman whether removing the language prohibiting prepayment from the note would give HMC the right to repay the note at its option. Berman responded, "No, not necessarily." Ingram agreed to removal of the reference to prepayment. As a result, the note that was finally executed in 2002 was silent on the issue of prepayment.
¶ 10 Two years later, HMC tendered the principal balance due to Ingram, and Ingram refused to accept the payment. Ingram wrote a letter to HMC which stated in part:
Our contract requires HMC to make regular monthly loan payments and quarterly director's fee payments to me through December 31, 2012. There is no provision in my note permitting prepayment without my consent as there is in each of the notes of the other selling shareholders. Moreover, as I understand it, the law does not permit prepayment of a note unless the note specifically permits such prepayment.
¶ 11 HMC brought this action against Ingram to determine HMC's right to prepay the note and to determine HMC's ability to increase Prosser's compensation under a restrictive covenant made part of the 2002 SRA. On cross-motions for summary judgment regarding the prepayment issue, the circuit court ruled in favor of Ingram, concluding that HMC has no right to prepay. In addition, HMC moved for summary judgment on the compensation issue. The circuit court ruled in favor of HMC, concluding that Prosser's employment agreement expired in 2005 and that his compensation was no longer limited by the restrictive covenant. HMC appeals and Ingram cross-appeals from these rulings.

Standard of Review
¶ 12 Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. See WIS. STAT. § 802.08 (2005-06).[1] The construction of a contract is a question of law properly decided by summary judgment. Demerath v. Nestle Co., Inc., 121 Wis. 2d 194, 196-97, 358 N.W.2d 541 (Ct. App. 1984). The parties do not assert that there is a dispute of material fact in this matter; instead, each asserts that the terms of the SRA and promissory note should be construed in their favor. Our review of a circuit court's grant of summary judgment is de novo. See Green Spring Farms v. Kersten, 136 Wis. 2d 304, 315-16, 401 N.W.2d 816 (1987).

Prepayment of Promissory Note
¶ 13 It is a basic rule of contractual interpretation that "the language of a contract must be understood to mean what it clearly expresses, and the courts may not depart from the plain meaning of a contract when it is free from ambiguities." Watertown Tractor & Equip. Co., Inc. v. Ford Motor Credit Co., 94 Wis. 2d 622, 637, 289 N.W.2d 288 (1980) (citation omitted). Further, "in the absence of an agreement to the contrary[,] a maker of an installment promissory note does not have the right to prepay the amount owed." Kohlenberg v. American Plumbing Supply Co., 82 Wis. 2d 384, 397, 263 N.W.2d 496 (1978) (citation omitted).
¶ 14 Here, the promissory note is silent with respect to prepayment, and Ingram argues that basic principles of contract construction, together with the rule inKohlenberg and the parol evidence rule, all lead to the inexorable conclusion that HMC has no right to prepay. We agree.
¶ 15 HMC argues that there is "an agreement to the contrary" per the language in Kohlenberg. It asserts that we should consider the fact that the 1999 note contained a provision expressly disallowing prepayment and that the 2002 note was silent as to prepayment. From this, HMC argues, we should infer that the parties intended to permit prepayment. However, as Ingram points out, no ambiguity exists on the face of the document itself and the parol evidence rule "prohibits a ... court from inquiring into the intent of parties to an unambiguous written agreement." Mitchell Bank v. Schanke, 2004 WI 13, ¶46, 268 Wis. 2d 571, 676 N.W.2d 849 (citation omitted). A litigant cannot resort to extrinsic evidence to create an ambiguity where none exists on the face of the document itself. See Chandelle Enterprises, LLC v. XLNT Dairy Farm, Inc., 2005 WI App 110, ¶12, 282 Wis. 2d 806, 699 N.W.2d 241, review denied, 2005 WI 150, 286 Wis. 2d 100, 705 N.W.2d 661.
¶ 16 In an effort to avoid the parol evidence rule, HMC next argues that "the totality of the documents exchanged" demonstrates that the 2002 note was not fully integrated. Parol evidence is admissible to show whether the parties intended to assent to the writing as the final and complete (or partial) statement of their agreement. Federal Deposit Ins. Corp. v. First Mortgage Investors, 76 Wis. 2d 151, 157, 250 N.W.2d 362 (1977). The question is "whether the parties intended the written agreement to be final and complete or `integrated' or whether they intended any prior agreements to be part of their total agreement." Kohlenberg, 82 Wis. 2d at 395.
¶ 17 If the oral testimony is offered as part of the entire agreement, it cannot contradict the written part. "The ambiguity complained of is not to arise `by resort to oral testimony to create it,' but instead must be offered and limited to help `clarify an ambiguity existing in a written option.'" Production Credit Ass'n of Green Bay v. Rosner, 78 Wis. 2d 543, 549, 255 N.W.2d 79 (1977) (citation omitted).
¶ 18 The 2002 note is not ambiguous. It is silent with reference to prepayment. HMC cannot resort to the negotiations between the parties to create ambiguity where none exists.
¶ 19 HMC next argues that even if the language of the note stands alone and is not supplemented by other evidence, Ingram is estopped from denying the right to prepay. HMC bases this argument on its assertion that Ingram knew that HMC wanted to prepay; Ingram did not want to grant such a right; and, after learning from Attorney Berman that the silence in the document would not definitively resolve the question, Ingram chose to sign the note anyway.
¶ 20 The doctrine of equitable estoppel focuses on the conduct of the parties. Affordable Erecting, Inc. v. Neosho Trompler, Inc., 2005 WI App 189, ¶17, 286 Wis. 2d 403, 703 N.W.2d 737, aff'd, 2006 WI 67, 291 Wis. 2d 259, 715 N.W.2d 620. The elements are: "(1) action or nonaction, (2) on the part of one against whom estoppel is asserted, (3) which induces reasonable reliance thereon by the other, either in action or nonaction, and (4) which is to his or her detriment." Id.
¶ 21 HMC's argument fails the second of these requirements. HMC did not rely on Ingram; it relied on its own attorney, Berman, who drafted the note. Certainly Ingram had no duty to inform HMC, in addition to Attorney Berman, of his position. As the circuit court correctly concluded, Attorney Berman's knowledge that Ingram did not wish to grant the option to prepay the note is imputed to HMC. A "party is deemed bound by the acts of his lawyer-agent and is considered to have `notice of all facts, notice of which can be charged upon the attorney.'" Link v. Wabash R.R. Co., 370 U.S. 626, 634 (1962) (citation omitted). Accordingly, we reject HMC's argument that Ingram is estopped from declining to accept prepayment of the note.
¶ 22 For the above reasons, we affirm the circuit court's denial of HMC's motion for summary judgment with respect to prepayment of the promissory note.

Employment Agreements
¶ 23 As part of the 1999 SRA, HMC agreed to six restrictions on its operations as follows:
6. Restrictive Covenants. During the term of this Agreement and until Ingram is paid the entire Purchase Price, including any period while the Note (if applicable) remains outstanding, the Company shall not take any of the following actions without the written consent of Ingram:
(a) Pay any dividend or make any distribution with respect to its shares to any of its shareholders;
(b) Sell any treasury shares or issue any additional equity securities;
(c) Merge, consolidate with, acquire any equity interest in, or be acquired by any other corporation or entity;
(d) Amend or otherwise modify its Articles of Incorporation or bylaws;
(e) Approve capital expenditures in excess of $12,500 per month cumulatively, beginning in July 1, 1999;
(f) Revise the compensation paid to Ingram and Robert Prosser as provided in those certain Employment Agreements between the Company and Ingram and Robert Prosser, respectively, dated as of an even date herewith, except as provided in such Employment Agreement.
These restrictions were held over and incorporated by reference in the 2002 SRA.
¶ 24 Prosser's employment agreement was signed at the same time as the 1999 SRA. The terms of the agreement lasted until 2002, with an automatic renewal for an additional three-year period unless either HMC or Prosser gave notice of a desire not to renew. The employment agreement was automatically renewed in 2002 and expired in 2005.
¶ 25 HMC argues that paragraph 6(f) is limited by the term of the employment agreements referenced therein. It argues that the second employment agreement expired by its own terms in 2005 and therefore was not subject to the general prefatory language of the SRA that governed the remaining five covenants. Ingram argues that the plain language of the SRA states that HMC "shall not take any of the following actions" contained in the six restrictive covenants "until Ingram is paid the entire purchase price." This includes paragraph 6(f) regarding compensation.
¶ 26 If the terms of the contract are plain and unambiguous, it is our duty to construe the contract according to its plain meaning even though one of the parties may have construed it differently. See Farm Credit Servs. v. Wysocki, 2001 WI 51, ¶12, 243 Wis. 2d 305, 627 N.W.2d 444. "Contracts must be read in such a manner as to give a reasonable meaning to each provision and without rendering any portion superfluous." DeWitt Ross & Stevens, S.C. v. Galaxy Gaming & Racing Ltd., 2004 WI 92, ¶44, 273 Wis. 2d 577, 682 N.W.2d 839. HMC contends that to construe the SRA to set Prosser's salary after 2005 would render superfluous the language "as provided in those certain Employment Agreements." It argues further that the fact that the SRA makes this reference to the employment agreements necessarily means that the restrictions in the SRA expired at the time the second employment agreement ended. Ingram argues that to construe the SRA to expire with the term of the second employment agreement would render superfluous the entire prefatory language in paragraph 6 of the SRA relating to the time period until he is paid in full. We agree with Ingram.
¶ 27 Contrary to HMC's assertion, the SRA did not incorporate by reference the entire content of the employment agreements, including their expiration dates. It incorporated only that portion of the employment agreements that related to Prosser's compensation. The parties were free to negotiate an agreement regarding Prosser's compensation in a separate document in addition to the employment agreements, and apparently did so. By virtue of this separate document, restrictions were placed on Prosser's compensation for a period of time established therein.
¶ 28 We disagree that this reading of the SRA renders as surplusage any reference to Prosser's employment agreements. The initial employment agreement set the amount of Prosser's salary at $100,000, and his bonus at 10% of the Store Operating Profit once a certain level of profitability was achieved. Together, salary and bonus were not to exceed $140,000 per year. The agreement also provided that prior to the agreement's renewal in 2002, the Board could review Prosser's salary and determine whether it should be increased.[2]
¶ 29 By referring to the employment agreements, the SRA fixed the specific amount of Prosser's compensation package from which HMC could not deviate without Ingram's consent. It also referenced the mechanism by which Prosser's salary increases would be considered (via action by the Board prior to the 2002 renewal). Contrary to HMC's argument, reference to the employment agreements adds specificity to the terms of the SRA. Moreover, HMC's reading of the SRA would render superfluous the entire prefatory language in the restrictive covenant and negate the very essence of the covenant itself. We conclude that paragraph 6(f) of the SRA precludes HMC from increasing Prosser's compensation without Ingram's approval until its note is paid in full.

CONCLUSION
¶ 30 We conclude that the promissory note is unambiguous and does not expressly provide for the right to prepay, therefore HMC may not prepay the note without Ingram's consent. Accordingly, we affirm the circuit court's order granting summary judgment against HMC on the prepayment issue. We also conclude that the restrictive covenant in Ingram's SRA precludes HMC from increasing Prosser's compensation without Ingram's consent. Accordingly, we reverse the circuit court's order granting summary judgment against Ingram and remand to the circuit court on the issue of compensation. The circuit court is directed to enter an order granting summary judgment against HMC declaring that paragraph 6(f) of Ingram's SRA precludes HMC from raising Prosser's compensation without Ingram's consent until such time as HMC's note is paid in full.
By the Court.Order affirmed in part; reversed in part and cause remanded with directions.
NOTES
[1] All references to the Wisconsin Statutes are to the 2005-06 version unless otherwise noted.
[2] HMC points to the following language in the 1999 employment agreement: "[p]rior to the renewal of this Agreement on July 1, 2002, the Employee's salary shall be reviewed and if appropriate, based upon merit or other factors, increased by the Board or its designee." It contends that once the agreement was renewed in 2002, this provision was no longer in effect and, as we understand HMC's argument, the Board could raise Prosser's salary at any time. Because we conclude that the restrictive covenant in the SRA is a valid agreement separate and apart from Prosser's employment contracts and that it controls HMC's ability to unilaterally increase Prosser's compensation until Prosser is paid in full, we reject this argument as well.