COURT OF APPEALS
DECISION
DATED AND FILED

May 24, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.      **2022AP195**

STATE OF WISCONSIN

Cir. Ct. No.  2020CV285

IN COURT OF APPEALS
DISTRICT II

---

SAPUTO CHEESE USA, INC. AND DCI CHEESE, INC.,

PETITIONERS-APPELLANTS,

V.

WISCONSIN DEPARTMENT OF REVENUE,

RESPONDENT-RESPONDENT,

CITY OF FOND DU LAC,

INTERVENOR-RESPONDENT.

---

APPEAL from an order of the circuit court for Fond du Lac County: ANDREW J. CHRISTENSON, Judge. *Affirmed*.

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Saputo Cheese USA, Inc. and DCI Cheese, Inc. (collectively "Saputo") appeal a circuit court order affirming a Wisconsin Tax Appeals Commission ruling and order.  Saputo argues that its clean-in-place ("CIP") equipment qualifies for tax exemption under WIS. STAT. § 70.11(27) (2021-22).[1]  The Commission determined that Saputo's CIP equipment is not exempt under WIS. STAT. § 70.11(27) because it is not "[u]sed directly" in the "[p]roduction process."  We affirm.

## BACKGROUND

¶2     Saputo manufactures and distributes cheese as a United States subsidiary of Saputo, Inc., a Canadian dairy company.  Saputo has ten different facilities in Wisconsin, each having substantially similar manufacturing operations and each utilizing the CIP equipment similar to the equipment at issue in this dispute.[2]  The parties have stipulated to the relevant facts regarding Saputo's equipment and manufacturing process.

¶3     Cheese is manufactured in batches.  After each batch is completed, the CIP equipment runs a cleaning cycle to clean the production equipment.  The CIP equipment creates various chemical solutions based on monitored conditions including the composition of the soil to be removed and the water conditions at the plant.  The water and chemicals flow through "showerheads" located inside of, and attached to, the cheese-making and raw material vats.  The equipment then

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] The parties have agreed to use the Alto plant as the test case for the rest of the CIP equipment at the various Saputo plants.

uses the chemical solutions in a series of flushing and rinsing cycles that remove the waste remaining in the cheese production vats after a production cycle. The waste flows into tanks, where it can be disposed of without contaminating the finished product. This cleaning cycle prepares the vats for the next production cycle, maintaining the integrity of the product and increasing plant efficiency. No raw materials used to produce Saputo's cheese ever pass through the CIP equipment, and the CIP equipment does not operate while cheese is being manufactured; if it did, the cleaning chemicals would contaminate the cheese.

¶4 Saputo contested twenty-nine Department of Revenue property assessments between 2014 and 2018 regarding the CIP equipment in use at seven of its facilities. Saputo argued to the Tax Appeals Commission that the Department had incorrectly concluded that the CIP equipment did not qualify for a tax exemption under WIS. STAT. § 70.11(27). On cross-motions for summary judgment, the Commission ruled in favor of the Department. Saputo appealed to the circuit court, which affirmed the commission's decision and agreed with the Department that the CIP equipment does not qualify for exemption because it is not used directly in the production process. This appeal followed.

## DISCUSSION

¶5 In cases involving administrative agencies, we review de novo the decision of the agency and not the decision of the circuit court. *Vega v. LIRC*, 2022 WI App 21, ¶25, 402 Wis. 2d 233, 975 N.W.2d 249, *review denied* (WI Sept. 13, 2022) (No. 2021AP24). The agency—in this case, the Commission—determines the credibility and weight of the evidence, not the reviewing court. *See Milwaukee Symphony Orchestra, Inc., v. DOR*, 2010 WI 33, ¶31, 324 Wis. 2d 68, 781 N.W.2d 674, *superseded on other grounds by statute*, *Wisconsin Prop.*

*Tax Consultants, Inc. v. DOR*, 2022 WI 51, ¶8, 402 Wis. 2d 653, 976 N.W.2d 482. The court will review the agency's interpretation of a statute and conclusions of law de novo.[3] *Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, ¶84, 382 Wis. 2d 496, 914 N.W.2d 21; *Mitchell Bank v. Schanke*, 2004 WI 13, ¶24, 268 Wis. 2d 571, 676 N.W.2d 849. "However, pursuant to WIS. STAT. § 227.57(10), we will give 'due weight' to the experience, technical competence, and specialized knowledge of an administrative agency as we consider its arguments." *Tetra Tech*, 382 Wis. 2d 496, ¶108. Statutes relating to taxes are to be strictly construed with the presumption that the property in question is taxable, and the burden of proof is on the party claiming an exemption. WIS. STAT. § 70.109.

¶6 This case involves the interpretation of WIS. STAT. § 70.11(27)(b), which, as relevant here, allows tax exemptions for "[m]achinery and specific processing equipment ... that are used exclusively and directly in the production process in manufacturing tangible personal property, regardless of their attachment to real property, but not including buildings." Saputo first argues that its CIP equipment is, in fact, "used directly" in the "production process"—both of which phrases are defined within the statute. *See* § 70.11(27)(a)5., 7. Second, Saputo asserts that the Department is impermissibly taking a position that is contrary to guidance it provided in the Wisconsin Property Assessment Manual (the "manual"), which stated that "equipment used to clean food processing equipment between batches which is embedded within and part of the production machine" are exempt. Finally, Saputo asserts that the Department is estopped from assessing the CIP equipment as nonexempt. We address each argument in turn.

---

[3] *See* WIS. STAT. § 227.10(2g) ("No agency may seek deference in any proceeding based on the agency's interpretation of any law.").

¶7      We begin with the requirements of WIS. STAT. § 70.11(27).  For Saputo to prevail, it must show that its CIP equipment is "used directly" in the "production process."  *See* § 70.11(27)(b).  The statute itself defines "used directly" as "used so as to cause a physical or chemical change in raw materials or to cause a movement of raw materials, work in process or finished products." Sec. 70.11(27)(a)7.  The parties disagree about whether the cleaning process involves "raw materials."  Saputo argues that the CIP process "undisputedly involves 'raw materials'" because the equipment causes a physical or chemical change to the leftover "raw material."  Specifically, Saputo asserts that the milk that is leftover in the cheese production vats is a "raw material," which the CIP equipment then chemically changes and moves.  This court must give statutory terms or phrases their common, ordinary, and accepted meaning.  *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.

¶8      The statute's plain language makes clear that the milk residue left in a cheese production vat is not a "raw material" according to the common, ordinary, and accepted meaning of that term.  A "raw material" is a "material available, suitable, or required for manufacturing, development, training or other finishing process but yet to be used."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1887 (unabr. 1993).  The CIP equipment chemically cleanses the cheese vats after the production process has completed, removing the milk residue and pumping it into a waste tank for disposal.  Thus, the leftover milk residue is not a "raw material" to be converted into a useful product; it is, by Saputo's own admission, waste.  The parties' joint stipulation specifically states that "no raw materials used in cheese production travel through the CIP equipment at any point."

¶9 Because Saputo's CIP equipment cleans waste from the sides of the production vats and does nothing to convert raw material into a useful product, we conclude that it is not "used directly" in production. This conclusion is further supported by the fact that Saputo must remove the waste before the next production cycle to prevent contamination of the next batch of cheese. Were the CIP equipment to activate with a raw material in the vat, it would contaminate it. Since the CIP equipment does not cause a physical or chemical change to a "raw material," the CIP equipment does not satisfy the "used directly" requirement of WIS. STAT. § 70.11(27)(b) and is thus not exempt from being taxed under that provision.

¶10 Moreover, even if we determined that the CIP equipment is "used directly," it does not satisfy the statutory requirement of being used in the "production process." Again, the statute itself defines "production process" as:

> the manufacturing activities beginning with conveyance of raw materials from plant inventory to a work point of the same plant and ending with conveyance of the finished product to the place of first storage on the plant premises, including conveyance of work in process directly from one manufacturing operation to another in the same plant, ... including quality control activities during the time period specified in this subdivision but excluding storage, machine repair and maintenance, research and development, plant communication, advertising, marketing, plant engineering, plant housekeeping and employee safety and fire prevention activities ….

WIS. STAT. § 27.11(27)(a)5.

¶11 Saputo asserts that the CIP equipment is a part of the production process because it is necessary to run the CIP equipment cleaning cycle between each production batch for quality control purposes. But, as set forth in the statute, being "necessary" is not a quality that makes the machinery part of the production

process. Saputo admits that the CIP equipment operates "after each batch of cheese has been manufactured." To be exempt, the statute requires that the equipment be used before the finished product is conveyed to the first point of storage. WIS. STAT. § 70.11(27)(a)5. This means that the CIP equipment cannot be involved with the manufacturing process because, as Saputo has admitted, the cleaning cycle occurs only after the cheese has been manufactured and cleared from the production equipment.

¶12 Next, Saputo argues that the Department's position is contrary to the guidance it provided in the manual, and therefore cannot be sustained by operation of law.[4] *See* WIS. STAT. § 73.16(2). But this argument was not preserved for appeal; Saputo did not make a contrary-to-guidance argument before the Commission, and therefore forfeited the right to raise the issue. *See **State v. Outagamie Cnty. Bd. of Adjustment***, 2001 WI 78, ¶55, 244 Wis. 2d 613, 628 N.W.2d 376 ("It is settled law that to preserve an issue for judicial review, a party must raise it before the administrative agency.").

¶13 Saputo counters that its circuit court briefs mentioned WIS. STAT. § 73.16(2), which generally provides that an agency may not take a position contrary to the guidance it provides. But the circuit court is not the place where issues should first be raised in administrative appeals; rather, judicial review of agency determinations contemplates a review only of the record developed before the agency. ***Outagamie Cnty. Bd. of Adjustment***, 244 Wis. 2d 613, ¶55. Even if we were to overlook Saputo's failure to raise the matter before the administrative

---

[4] The manual provides that equipment used to clean food processing equipment between batches which is embedded within and part of the production machine is "specific processing equipment" and therefore exempt from taxation according to WIS. STAT. § 70.11(27)(a).

bodies, we are not persuaded that the mere mention of § 73.16(2) before the circuit court would have been sufficient to preserve the issue for appeal. *See State v. Eugene W.*, 2002 WI App 54, ¶13, 251 Wis. 2d 259, 641 N.W.2d 467 (holding that to avoid forfeiture, a party must raise an issue with sufficient prominence such that the circuit court understands that it is called upon to make a ruling).

¶14    Saputo's equitable estoppel argument similarly fails because it was never raised before the Commission. Equitable estoppel consists of (1) action or nonaction, (2) by the party against whom estoppel is asserted, (3) that induces reliance thereon by the other party, (4) to its detriment. *Kohlenberg v. American Plumbing Supply Co.*, 82 Wis. 2d 384, 398, 263 N.W.2d 496 (1978). Saputo failed to make this argument to the Commission. *See Rascar, Inc. v. Bank of Or.*, 87 Wis. 2d 446, 454, 275 N.W.2d 108 (Ct. App. 1978) (When a party is not diligent in their pursuit of an estoppel claim, their claim dies with the lack of diligence.).

¶15    In summary, Saputo's CIP equipment does not satisfy the requirements of WIS. STAT. § 70.11(27) that it be "directly used" in the "production process" in order to qualify for tax exemption. Saputo's arguments that the Commission's ruling violates the contrary-to-guidance statute and that the Department is estopped from assessing the equipment as it did fail because they were not preserved for appeal. Accordingly, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

8